IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES DENNIS, | : | CIVIL ACTION |
| | : | NO. 18-2689 |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    May 15, 2019

This case presents a novel question not yet addressed by either this Court or the Third Circuit: may an individual whose conviction for first-degree murder was vacated pursuant to a writ of habeas corpus, ordering release or a new trial, and who subsequently entered a no contest plea to third-degree murder, bring a § 1983 claim for fabrication of evidence and deliberate deception in connection with the vacated conviction for first-degree murder? Plainly put, yes.

Over twenty-five years ago, in 1992, James Dennis was sentenced to death for first-degree murder, following a trial in the Philadelphia Court of Common Pleas replete with instances of police misconduct and Brady violations (the "1992 conviction"). Three years ago, the Third Circuit, sitting en banc, granted Mr. Dennis habeas relief on account of those very Brady violations and observed that the Commonwealth of Pennsylvania's case

1

against Mr. Dennis was "effectively gutted." Dennis v. Sec'y, Pa. Dep't of Corr., 834 F.3d 263, 269 (3d Cir. 2016).

Following the en banc panel's decision, the Commonwealth was instructed to set Mr. Dennis free or retry him, neither of which happened. Instead, the Commonwealth offered Mr. Dennis a no contest plea to a reduced charge of third-degree murder. On December 22, 2016, after spending over a quarter-century on death row, Mr. Dennis entered the no contest plea, was sentenced to time served, and left prison. He now brings a § 1983 claim against the City of Philadelphia and two detectives and various Joe Doe police officers from the Philadelphia Police Department for violations of his Fourteenth Amendment right to due process and a fair trial.

**TABLE OF CONTENTS**

I.      BACKGROUND ........................................ 3
        A.   The Murder & The Investigation................. 3
        B.   The Alleged Fabricated Clothing Evidence &
             Undermining of Mr. Dennis's Alibi.............. 6
        C.   The Complicity of the City..................... 7
        D.   Mr. Dennis's Habeas Petition................... 7
II.     LEGAL STANDARD ................................... 9
III.    DISCUSSION ....................................... 10
        A.   Heck Does Not Bar This Action................. 11
             1. The Heck Doctrine .......................... 11
             2. Post-Heck Jurisprudence: Two-Conviction Cases  15
             3. Distinguishing Third Circuit Post-Heck Case
                Law ...................................... 19
        B.   Defendants' Alternative Arguments are
             Unpersuasive................................. 21
             1. A Failure to State a Malicious Prosecution Claim
                is Irrelevant Because Mr. Dennis Has Not Brought
                Such a Claim ............................... 21
             2. Mr. Dennis Has Adequately Alleged Causation .. 24
             3. This Action is Not Time-Barred .............. 25
             4. The Detectives are Not Entitled to Qualified
                Immunity at this Stage ..................... 27
             5. The City is Entitled to Qualified Immunity on
                the Brady Claim, but the Remainder of the Claim
                Against the City Survives ................... 31
IV.     CONCLUSION ...................................... 33

## I.   BACKGROUND

Mr. Dennis alleges the following facts, all of which are presumed to be true for purposes of resolving a motion to dismiss.

### A.   The Murder & The Investigation

On October 22, 1991, Ms. Chedell Williams was murdered near the Fern Rock SEPTA station in Philadelphia, Pennsylvania.

Compl. ¶¶ 8-10, ECF No. 1. According to eyewitnesses, Ms. Williams was followed by two men, one of whom shot Ms. Williams at close range in the neck. Id. ¶ 9. The shooter and his accomplice then made their way towards a getaway car, driven by a third man. Id. Nine eyewitnesses provided descriptions of the assailants to detectives Frank Jastrzembski and Manuel Santiago as well as various Joe Doe officers (together with the two detectives, the "defendant officers"). Id. ¶ 11. All nine eyewitnesses generally described the shooter as "about 170 to 180 pounds and 5'9" to 5'10", . . . in his late teens to early twenties, with a dark complexion, and wearing a red sweat suit." Id. Notwithstanding this physical description, Mr. Dennis, who was 5'4" and about 125 pounds with a medium complexion at the time of the incident, was later arrested for the murder of Ms. Williams. Id. ¶¶ 12-18. Mr. Dennis was the only person ever arrested for the three-person crime, despite not matching the physical description of the shooter or the other two men. Id. ¶ 18.

Only four of the nine eyewitnesses picked Mr. Dennis out of a photo array, which consistently placed Mr. Dennis in the first position, and three of these four did so "tentatively." Id. ¶¶ 22, 24, 28, 50, 51. These were the only eyewitnesses invited to the lineup. Id. ¶ 50. Three of these four eyewitnesses then identified Mr. Dennis in the lineup and

4

subsequently testified at trial for the Commonwealth, while the one who did not identify him in the lineup did not. Id. ¶¶ 51–52. Defense trial counsel never learned that five of the nine eyewitnesses never picked Mr. Dennis out of the photo array, and despite requesting a lineup with all nine eyewitnesses, such a lineup never occurred. Id. ¶ 50.

Mr. Dennis alleges that the defendant officers concealed information regarding other individuals who had confessed their involvement with the murder or knew who was involved and concealed and coerced certain witnesses. Id. ¶¶ 36–38, 40-41. For example, the defendant officers did not follow up on the inconsistencies between statements made by Zahara Howard, who had accompanied Ms. Williams, the murder victim, to the SEPTA station. Id. ¶¶ 32-34. Specifically, although Ms. Howard had first told the defendant officers that she had never seen the assailants, she later told her aunt and uncle that she recognized the assailants from Olney High School, a school Mr. Dennis had never attended. Id. ¶ 32. Ms. Howard's aunt and uncle informed the defendant officers about what Ms. Howard had said, which was also corroborated by Ms. Williams's aunt. Id. ¶ 33. This information, which was recorded in the detectives' activity logs, was concealed from Mr. Dennis for ten years. Id. ¶ 34.

Several days after the murder, the Philadelphia Police Department was advised by Montgomery County law enforcement that

an inmate in the Montgomery County Prison had advised them that

he had spoken with a man who had confessed his involvement in

the murder. Id. ¶ 36. The inmate provided a signed statement,

which included details about all three men involved in the

murder and identified the source of the information. Id. ¶¶ 36–

37. The investigation itself of these three individuals and the

related materials were never provided to the defense trial

counsel; this information was revealed a decade later during

PCRA discovery. Id. ¶ 38.

### B. The Alleged Fabricated Clothing Evidence & Undermining of Mr. Dennis's Alibi

Mr. Dennis alleges that the defendant officers

fabricated the existence of certain clothing matching the

clothing of the shooter as described by eyewitnesses to the

murder. Id. ¶¶ 45-46, 66-67. At trial, Detective Jastrzembski

testified that the clothing had been found at Mr. Dennis's

residence but had since "disappeared" from police headquarters.

Id.

According to Mr. Dennis, the defendant officers also

engaged in deliberate deception by concealing evidence that

would have supported Mr. Dennis's alibi and supporting false

testimony at trial that undermined Mr. Dennis's alibi.

Specifically, a witness's time-stamped welfare receipt

corroborated Mr. Dennis's alibi that he was elsewhere at the

time of the murder. Id. ¶¶ 47–49, 65. But the defendant officers took the only copy of the welfare receipt, never shared it with Mr. Dennis, and did not correct the witness when she misread the receipt's military-style time-stamp while interviewing her. Id. ¶¶ 47–49. The witness repeated her mistake at trial. Under those circumstances, her testimony no longer supported Mr. Dennis's alibi. Id. ¶ 65. It was not until direct appeal counsel obtained a copy of the receipt that the witness's mistake and the import of that mistake became apparent. Id. ¶¶ 48–49.

## C. The Complicity of the City

Further, according to Mr. Dennis, the City of Philadelphia, which operates, directs and controls the Philadelphia Police Department, maintained a policy, practice, or custom of misconduct in homicide investigations, including using coercive interview and interrogation techniques, fabricating and tampering with evidence, and conducting improper identification procedures. Id. ¶¶ 82–83. To that end, the City failed to discipline, train, and take remedial action against detectives and police officers who engaged in such misconduct and abused their authority. See id. ¶ 1.

## D. Mr. Dennis's Habeas Petition

Against that factual background, Mr. Dennis began federal habeas proceedings in 2011 in the Eastern District of

7

Pennsylvania. Dennis v. Wetzel, 966 F. Supp. 2d 489, 498 (E.D.
Pa. 2013). After reviewing Mr. Dennis's habeas petition, Judge
Brody vacated Mr. Dennis's conviction, expressing concern that
Mr. Dennis "was wrongfully convicted and sentenced to die for a
crime he did not commit." See id. at 518. On February 9, 2015,
however, a Third Circuit panel reversed and remanded the case
back to Judge Brody. See Dennis v. Sec'y, Pa. Dep't of Corr.,
777 F.3d 642 (3d Cir. 2015). Subsequently, on August 23, 2016,
the Third Circuit, en banc, reversed the Third Circuit panel
decision and reinstated the vacatur of Mr. Dennis's conviction,
noting that the Commonwealth's case was "effectively gutted."
See Dennis v. Sec'y, Pa. Dep't of Corr., 834 F.3d 263, 269 (3d
Cir. 2016). In its mandate, issued on September 30, 2016, the
Third Circuit directed the Commonwealth either to set Mr. Dennis
free or retry him. See Mandate, Docket No. 13-9003; see also
Mandate, Docket No. 11-1660, ECF No. 64.

Rather than do either, the Commonwealth offered Mr.
Dennis a no contest plea to third-degree murder, which Mr.
Dennis entered on December 22, 2016. After nearly twenty-five
years on death row, Mr. Dennis walked out of prison.

Mr. Dennis now brings this action under 42 U.S.C.
§ 1983 seeking redress for the alleged fabrication of evidence
and deliberate deception by the defendant officers, as described

above, that deprived him of his Fourteenth Amendment right to
due process of law and a fair trial.

The two named detectives and the City have moved to
dismiss the complaint. The Court heard argument on the motion to
dismiss, and the motion is now ready for disposition.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When considering such a motion, the Court must "accept
as true all allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party." DeBenedictis v.
Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal
quotation marks removed). To withstand a motion to dismiss, the
complaint's "[f]actual allegations must be enough to raise a
right to relief above the speculative level." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007). This "requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Id. Although a
plaintiff is entitled to all reasonable inferences from the
facts alleged, a plaintiff's legal conclusions are not entitled
to deference, and the Court is "not bound to accept as true a

legal conclusion couched as a factual allegation." <u>Papasan v.</u> <u>Allain</u>, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. <u>See, e.g.,</u> <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. <u>See</u> <u>Jordan v. Fox, Rothschild,</u> <u>O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994); <u>Pension</u> <u>Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

Mr. Dennis has brought claims under § 1983 for fabrication of evidence and deliberate deception by the defendant officers in violation of his Fourteenth Amendment right to due process and a fair trial in connection with his 1992 conviction. As used in Mr. Dennis's complaint, "deliberate

deception" refers to the defendant officers' concealment of relevant and material evidence and support of false testimony at trial. Mr. Dennis has also alleged civil rights conspiracy and failure to intervene against all Defendants, supervisory liability against Detective Jastrzembski, and municipal liability against the City in connection with his 1992 conviction.

Defendants' principal argument in their motion to dismiss Mr. Dennis's complaint is that <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), bars this action because by entering a no contest plea in 2016 after securing federal habeas relief for the 1992 conviction, any § 1983 relief awarded to Mr. Dennis would necessarily undermine the validity of the 2016 plea. The Court first discusses the applicability of <u>Heck</u> to the facts of this case and then turns to an analysis of Defendants' alternative arguments.

### A.    <u>Heck</u> Does Not Bar This Action

#### 1.    The <u>Heck</u> Doctrine

When an individual convicted of a crime brings a § 1983 claim for a violation of his constitutional rights in connection with his conviction or sentence, an inevitable problem arises because success on the § 1983 claim could effectively serve as a collateral attack on the underlying criminal conviction. <u>Heck</u>, 512 U.S. at 484–87. In other words,

success on the § 1983 claim could undermine the validity of the underlying criminal conviction.

For example, a man is convicted in state court of voluntary manslaughter.[1] He is sentenced to fifteen years in prison. Following his conviction and sentencing, he brings a § 1983 claim for damages, alleging that the police, under color of state law, engaged in an unlawful investigation and destroyed exculpatory evidence. His conviction remains outstanding and unchallenged. But how could the conviction be valid if he recovered damages for the unlawful investigation that resulted in that conviction? It could not. Success on the § 1983 suit would undermine the validity of the underlying conviction. Such a result is impermissible because absent relief from the state court, only federal habeas relief can vacate the conviction. But, of course, not all § 1983 claims are alike just as not all convictions are alike. How, then, are courts to determine when a § 1983 claim would undermine the validity of an underlying conviction?

In Heck, the Supreme Court provided the answer. There, the Supreme Court explained that in order to recover damages under § 1983 "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose

---

[1] The facts for this example are drawn from the facts of Heck. See generally Heck, 512 U.S. at 479–80.

unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 512 U.S. at 486-87 (emphasis added) (internal citations omitted). "But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. at 487 (internal citations omitted).

In many ways, applying Heck's dictates should be simple enough to follow by applying a two-step inquiry. First, the Court asks the following question: would a favorable judgment in the plaintiff's § 1983 action undermine the validity of his conviction or sentence? If yes, the Court proceeds to the second step and asks the following question: has that conviction or sentence has been invalidated? Heck supplies four ways in which the conviction or sentence could be invalidated: (1) reversed on direct appeal, (2) expunged by executive order, (3) declared invalid by an authorized state tribunal, or (4) called into question by a federal writ of habeas corpus. Id. at 486-87.

To clarify, imagine a chain of events beginning with a police investigation, followed by a conviction, followed by a § 1983 claim; the chain is unbroken from the conviction to the § 1983 claim. If this were the chain of events leading up to Mr. Dennis's § 1983 claim, Defendants would be correct that <u>Heck</u> bars the action. But, importantly, this is <u>not</u> Mr. Dennis's path. The difference is that Mr. Dennis's 1992 conviction was vacated; he was granted federal habeas relief, breaking the chain of events leading up to his § 1983 claim. Following the issuance of federal habeas relief, Mr. Dennis entered a no contest plea. Therefore, the issue in this case is whether a § 1983 action may proceed when there are two convictions, one of which has been invalidated (the 1992 conviction) and one of which has not (the 2016 no contest plea conviction).[2]

_____

[2] The Court notes that there are some post-<u>Heck</u> cases where the Court's inquiry starts and stops with step one. For example, in the Third Circuit, certain § 1983 claims regarding excessive force have been permitted, even in cases where the underlying criminal conviction had not been invalidated. <u>Lora-Pena v. FBI</u>, 529 F.3d 503, 506 (3d Cir. 2008); <u>Nelson v. Jashurek</u>, 109 F.3d 142, 145-46 (3d Cir. 1997); <u>Fuller v. Narkin</u>, Civil Action No. 16-995, 2018 WL 6171645, at *1 (E.D. Pa. Nov. 26, 2018), <u>appeal docketed</u>, No. 18-3660 (3d Cir. Dec. 7, 2018). This makes sense. Would a § 1983 claim regarding excessive force necessarily undermine the validity of the underlying conviction? In most cases, the answer would be no, and <u>Heck</u> would not bar the action. After all, even the guilty are entitled to be free from the use of excessive force.

## 2.    Post-__Heck__ Jurisprudence: Two-Conviction Cases

To answer the question about whether a § 1983 action may proceed when there are two convictions, which has not yet been addressed by the Third Circuit, the Court looks in the first instance to how other courts have confronted similar issues.

Sister circuits and district courts have held that, in certain circumstances, a plaintiff may bring a § 1983 claim for Miranda violations and Brady violations related to a conviction that had been vacated or called into question, notwithstanding the existence of a subsequent guilty plea or conviction based on the same general underlying conduct of the plaintiff. See Jackson v. Barnes, 749 F.3d 755, 758 (9th Cir. 2014); Poventud v. City of New York, 750 F.3d 121, 124-25 (2d Cir. 2014) (en banc); Smith v. Gonzales, 222 F.3d 1220, 1222 (10th Cir. 2000); Munchinski v. Solomon, 2:13cv1280, 2014 WL 11474847, at *5 (W.D. Pa. Sept. 15, 2014), rev'd on other grounds, 618 F. App'x 150 (3d Cir. 2015).

In such two-conviction cases, these courts ask a modified version of the first question in the two-step inquiry: what is the effect, if any, of the particular § 1983 action on the first conviction as well as the second conviction? If the answer is that one (or both) of the convictions would be

undermined, the Court proceeds to step two and asks if the conviction that would be undermined has been invalidated.

In a thorough en banc opinion, the Second Circuit addressed a two-conviction case similar to Mr. Dennis's. There, a plaintiff was convicted in 1998 of attempted murder, among other crimes. Poventud, 750 F.3d at 124. This conviction was vacated by a successful state collateral challenge based on Brady violations. Id. But following this relief, Mr. Poventud entered a guilty plea in 2006 to a lesser charge (attempted robbery) based on the same underlying conduct associated with the 1998 conviction (the "2006 plea conviction") for a sentence of "time already served" and walked out of prison. Id.

Mr. Poventud then brought a § 1983 claim based on the Brady violations associated with his first conviction (the "1998 conviction"). Id. Because there were two convictions, the 1998 conviction and the 2006 plea conviction, the Second Circuit effectively asked the modified step one question: what was the effect, if any, of Mr. Poventud's § 1983 action on his 1998 conviction as well as his 2006 plea conviction?

The Second Circuit reasoned that "[t]he remedy for a Brady claim is . . . a new trial, as proof of the constitutional violation need not be at odds with his guilt." Id. at 133 (citing United States v. Sipe, 388 F.3d 471, 493 (5th Cir. 2004)). The Second Circuit then explained that "Brady-based

16

§ 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the Brady violation occurred." Id. at 132 (emphasis in original) (internal citations omitted). Logically, the subsequent plea conviction could not possibly replicate the Brady violations associated with Mr. Poventud's first conviction. See id. at 134. Therefore, Mr. Poventud's § 1983 action, if successful, would only have undermined the validity of the 1998 conviction, which had been vacated, and would not have undermined the validity of the later guilty plea. Id. In other words, "far from necessarily implying the invalidity of his second conviction," the § 1983 action would "not have any bearing on it." Jackson, 749 F.3d at 760 (internal quotations marks and alterations omitted).

Having determined in step one that only the validity of the 1998 conviction would be undermined if Mr. Poventud succeeded on his § 1983 action, the Second Circuit proceeded to step two: had the 1998 conviction been invalidated? The answer was yes; that conviction had been vacated by the state court. Therefore, the Second Circuit held that Heck did not bar the action.

### a. Application to Mr. Dennis's Action

Here, Mr. Dennis has alleged fabrication of evidence and deliberate deception in violation of his Fourteenth

17

Amendment right to due process and a fair trial in connection with his 1992 conviction. This type of action, like a Brady-based action, only bears on the conviction in which the violations occurred and not on a subsequent conviction, even if based on the same general underlying conduct of the plaintiff.

Why is this so? A Brady violation bears upon due process and the fairness of the trial and not upon an individual's ultimate guilt or innocence. Similarly, fabricated evidence and deliberate deception, including the support of false testimony at trial, thwart the basic purposes of due process and work to deny an individual a fair trial. Under our system of justice, even the guilty are entitled to due process and a fair trial. In other words, if a plaintiff brings a § 1983 claim that does not depend upon his ultimate guilt or innocence of the underlying conviction, it does not matter even if after the first criminal conviction is vacated, he is convicted a second time for the same conduct.

The Ninth Circuit clarified this point further in Jackson. There, the plaintiff, Mr. Jackson, was reconvicted of first-degree murder following the issuance of habeas relief. Jackson, 749 F.3d at 758–59. Notwithstanding the reconviction, the Ninth Circuit found that his § 1983 claim for Fifth Amendment violations stemming from his first conviction were not barred by Heck. Id. at 760–61. In reaching this conclusion, the

18

Ninth Circuit explained that the second conviction was a "clean conviction" and "entirely insulated from the . . . violation associated with his initial conviction." Id. at 761; see also Poventud, 750 F.3d at 132. Therefore, a § 1983 action such as Mr. Dennis's, like Mr. Poventud's in the Second Circuit and Mr. Jackson's in the Ninth Circuit, only bears on the conviction in which the violations occurred, i.e., the 1992 conviction.

Because, here, success on Mr. Dennis's § 1983 action would only undermine the validity of his 1992 conviction, where the alleged Fourteenth Amendment violations occurred, the Court moves to the second question: has the 1992 conviction been invalidated? Yes. The 1992 conviction was vacated by a federal writ of habeas corpus. Therefore, Heck does not bar this action.

### 3.   Distinguishing Third Circuit Post-Heck Case Law

Next, Defendants place much emphasis on two Third Circuit cases. But these cases are inapposite as both present the standard one-conviction case. In the present action, however, as previously discussed, the Court is faced with a two-conviction case where one conviction has been invalidated and one has not.

In Curry v. Yachera, 835 F.3d 373, 377-79 (3d Cir. 2016), the Third Circuit affirmed the District Court's decision to grant a motion to dismiss based on Heck, where the plaintiff

had entered a no contest plea. But the plaintiff's <u>single</u> conviction had <u>never</u> been invalidated. His claim for § 1983 relief for malicious prosecution, if successful, would have undermined the validity of his underlying conviction, which was never invalidated. Therefore, <u>Heck</u> barred the action.

In <u>Gilles v. Davis</u>, 427 F.3d 197 (3d Cir. 2005), a plaintiff sought damages under § 1983 for violation of his First Amendment rights when he was arrested for disorderly conduct. 427 F.3d at 203. Like <u>Curry</u>, <u>Gilles</u> was a one-conviction case, but unlike in <u>Curry</u>, the <u>Gilles</u> plaintiff had received an expungement of his conviction pursuant to the "Accelerated Rehabilitative Disposition (ARD)" program. <u>Id.</u> at 202. Nevertheless, success on the § 1983 claim would still undermine the validity of the plaintiff's underlying conviction because the underlying conviction had never been invalidated by a form of executive expungement or other form of invalidation as contemplated in <u>Heck</u>. <u>Id.</u> at 210-11. Therefore, <u>Heck</u> barred the action. <u>Id.</u> at 211-12.

Mr. Dennis, unlike the plaintiffs in <u>Curry</u> and <u>Gilles</u>, has met the plain requirements of <u>Heck</u>; by securing federal habeas relief, his 1992 conviction no longer stands. Therefore, he now may seek damages under § 1983 related to his 1992 conviction.

**B.  Defendants' Alternative Arguments are Unpersuasive**

**1.   A Failure to State a Malicious Prosecution Claim is Irrelevant Because Mr. Dennis Has Not Brought Such a Claim**

Defendants insist that Mr. Dennis's claims are akin to malicious prosecution, which requires a final favorable termination.[3] According to Defendants, Mr. Dennis's no contest plea is not a final favorable termination, so his action must fail as a matter of law.

Defendants' argument is mistaken for two reasons: (1) it improperly treats Mr. Dennis's action as a malicious prosecution claim, which he has specifically stated he is not alleging,[4] and (2) it confuses the final favorable termination requirement for malicious prosecution claims with the dictates of Heck.

The Third Circuit has clarified that fabrication of evidence is a stand-alone claim that is not dependent upon a malicious prosecution claim. Halsey v. Pfeiffer, 750 F.3d 273, 292 (3d Cir. 2014) (rejecting the "contention that evidence-

---

[3] The tort of malicious prosecution requires a final termination in favor of the accused. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000); Poventud, 750 F.3d at 131. To that end, when the accused voluntarily enters into a compromise to terminate the prosecution, there is no final favorable termination. See Poventud, 750 F.3d at 131; see also Restatement (Second) of Torts § 660(d) (1977).

[4] Rather than treat Mr. Dennis's claims as they are alleged, depending upon the argument being made, Defendants insist on treating Mr. Dennis's claims as either malicious prosecution claims or Brady claims.

fabrication claims must be tied to malicious prosecution cases"). Indeed, the Third Circuit has found that it would be "untenable" to hold that "there would not be a redressable constitutional violation when a state actor used fabricated evidence in a criminal proceeding if the plaintiff suing the actor could not prove the elements of a malicious prosecution case . . . ." Id.

Poventud, too, supports this contention that a Fourteenth Amendment § 1983 claim such as one for fabrication of evidence is distinct from a malicious prosecution claim. Poventud, 750 F.3d at 132 (holding that "[n]ot every § 1983 claim that arises out of a criminal case requires . . . favorable termination" and explaining that "[u]nlike malicious prosecution, many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction"). Even Heck acknowledges the possibility that remedying certain violations of constitutional rights will not undermine the validity of the underlying conviction. Heck, 512 U.S. at 487 n.7 (explaining that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction").

The practical effect of Defendants' argument would eviscerate the rule from Halsey that distinguishes fabrication-of-evidence claims from malicious prosecution claims.[5]

The distinction between a deliberate deception claim and a malicious prosecution claim dates at least as far back as 1935 when the Supreme Court explained that a distinct deprivation of liberty occurs when there is a "deliberate deception of court and jury by the presentation of testimony known to be perjured." Mooney v. Holohan, 294 U.S. 103, 112 (1935). Again, in 1942, the Supreme Court reiterated this point, holding that "imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain [a] conviction, and from the deliberate suppression by those same authorities of evidence favorable to [the plaintiff]" sufficiently states "a deprivation of rights guaranteed by the Federal Constitution." Pyle v. Kansas, 317 U.S. 213, 216 (1942). Neither of these early instances of a deliberate deception claim

_____

[5] Two non-precedential Third Circuit opinions have stated that fabrication-of-evidence claims, like malicious prosecution claims, do not accrue until the underlying criminal proceedings terminated in the accused's favor. See Floyd v. Att'y Gen. of Pa., 722 F. App'x 112, 114 (3d Cir. 2018); Ortiz v. N.J. State Police, 747 F. App'x 73, 77 (3d Cir. 2018). Regardless of their non-precedential value, those cases are inapposite to this case in that they are one-conviction cases focused on accrual issues. Further, both cases recognize the ways in which a conviction can be invalidated in accordance with Heck. Floyd, 722 F. App'x at 114; Ortiz, 747 F. App'x at 79. It was simply the case that such invalidation had not occurred in those one-conviction cases.

was contingent upon a malicious prosecution claim. Like a fabrication-of-evidence claim, deliberate deception does not depend upon the elements of a malicious prosecution claim but rather requires the plaintiff to show that the conduct at issue "was so significant that it could have affected the outcome of the criminal case." Halsey, 750 F.3d at 295.

Under those circumstances, a failure to plead a malicious prosecution claim does not derail Mr. Dennis's claims for fabrication of evidence and deliberate deception.

### 2. Mr. Dennis Has Adequately Alleged Causation

Defendants argue that because Mr. Dennis entered a no contest plea to third-degree murder (the 2016 plea conviction), he cannot adequately allege causation between the defendant officers' misconduct and his first-degree murder conviction (the 1992 conviction). In order to succeed on a § 1983 claim for fabrication of evidence, Mr. Dennis must prove that "there is a reasonable likelihood, that, without the use of that evidence, [he] would not have been convicted." Halsey, 750 F.3d at 294. Similarly, to succeed on his deliberate deception claim, Mr. Dennis would need to prove by a preponderance of the evidence that he would not have been convicted of first-degree murder in the absence of the deliberate deception. See Drumgold v. Callahan, 707 F.3d 28, 49 (1st Cir. 2013).

Defendants mischaracterize the nature of Mr. Dennis's § 1983 action. Mr. Dennis is <u>not</u> seeking damages related to the conviction pursuant to his 2016 no contest plea. Rather, he is seeking redress for the violations that occurred at his first trial, wherein he was convicted of first-degree murder and sentenced to death in 1992. Therefore, the lack of causation argument fails.

### 3. This Action is Not Time-Barred

Defendants have also argued that Mr. Dennis's claim is time-barred. The statute of limitations for § 1983 actions is governed by state tort law. <u>Wilson v. Garcia</u>, 471 U.S. 261, 279–80 (1985). In Pennsylvania, state tort law provides a two-year statute of limitations. 42 Pa. Cons. Stat. § 5524(2).

As explained in <u>Heck</u>, recovery under § 1983 for unlawful actions that would render a conviction or sentence invalid requires that the plaintiff prove that the conviction or sentence has been reversed or otherwise called into question by the issuance of a writ of habeas corpus. <u>Heck</u>, 512 U.S. at 486-87. Therefore, the Court must first determine when Mr. Dennis was first afforded habeas relief by the district court, i.e., when his 1992 conviction was first called into question.

On August 21, 2013, the district court granted Mr. Dennis's habeas petition. Defendants appealed this decision on

September 20, 2013. On October 22, 2013, the district court stayed its order granting Mr. Dennis habeas relief pending the appeal. Defendants argue that the clock stopped running only when the district court stayed its order vacating the 1992 conviction.[6] Assuming Defendants' argument to be the case, the statute of limitations ran from the district court's order granting habeas relief (August 21, 2013) until it stayed that order pending the appeal (October 22, 2013), a period of 62 days.

So, on what date did the clock restart for statute of limitations purposes? The clock restarted on September 30, 2016, the date that the Third Circuit issued the mandate affirming the district court's order granting Mr. Dennis habeas relief and reinstating the vacatur. See Fed. R. App. P. 41(c) ("The mandate is effective when issued."). As the advisory committee notes to Federal Rule of Appellate Procedure 41(c) make clear, "[a] court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed." Fed. R. App. P. 41(c) advisory committee's note to 1998 amendment; see also Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 97-98 (3d Cir. 1988) ("An appellate court's decision is not final until its mandate issues."). Until the mandate issued on

---

[6] As will become apparent, the Court need not determine whether the clock stopped running as soon as the notice of appeal was filed, an even earlier date.

September 30, 2016, "the appeal . . . was still pending and the litigation had not yet come to an end," and the district court's stay remained in effect. Mary Ann Pensiero, Inc., 847 F.2d at 97; see also In re Chambers Development Co., 148 F.3d 214, 224 n.8 (3d Cir. 1998).

Therefore, the clock on the statute of limitations ran from the date the district court entered its order granting habeas relief to the date the district court entered its order staying its earlier order granting habeas relief (62 days) plus from the date the Third Circuit issued the mandate to the filing of this action (635 days), for a total of 697 days. Given that the statute of limitations for Mr. Dennis's action is two years (730 days), Mr. Dennis's action was timely by 33 days (730-697 = 33).

### 4. The Detectives are Not Entitled to Qualified Immunity at this Stage

Defendant detectives also argue that they are entitled to qualified immunity at this time.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, government officials are

entitled to immunity in their individual capacities unless "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the alleged constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Recent Supreme Court case law has emphasized that "the clearly established right must be defined with specificity." City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019). Although this specificity is "particularly important in excessive force cases," in any type of case in which qualified immunity is raised, the Court must be careful to avoid defining "clearly established law at a high level of generality." Id. (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018)) (internal quotation marks omitted). The Supreme Court has further explained that although "there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." Dist. of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018). But the Supreme Court has gone on to note that "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." City of Escondido, 139 S. Ct. at 503 (internal quotation marks omitted).

Importantly, the Court emphasizes that this case is at the motion-to-dismiss stage, and at this stage in the proceedings, "qualified immunity will be upheld . . . only when the immunity is established on the face of the complaint." Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006). Therefore, at this stage in the proceedings, the Court focuses its inquiry on Mr. Dennis's allegations in the complaint. See Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 859 (3d Cir. 2014).

Defendants raise two arguments as to why the two named detectives are entitled to qualified immunity: (1) Mr. Dennis's 2016 acceptance of a no contest plea makes it impossible for a reasonable detective to have known that he was violating clearly established law in 1992, and (2) Mr. Dennis's claims seek relief for Brady violations occurring before Brady obligations of the police had been established. Each is discussed in turn.

First, Defendants argue that "no reasonable detective serving [in] 1992 . . . could possibly have known that she could be sued for a Brady or fabrication of evidence violation by a plaintiff who had pled guilty or no contest." Mot. to Dismiss at 13. Defendants' argument on this point is obtuse and does not properly frame the qualified immunity inquiry. See, e.g., Sauers v. Borough of Nesquehoning, 905 F.3d 711, 719 (3d Cir. 2018) (explaining that the qualified immunity inquiry was whether the

right at issue in that case was clearly established at the time the alleged conduct occurred).

Second, Defendants recharacterize Mr. Dennis's fabrication-of-evidence and deliberate deception claims as a Brady claim. Id. at 14. They argue that because it was not clearly established in 1992 that police officers had any Brady obligations, the Defendant detectives are entitled to qualified immunity. Id.

As a general matter, Defendants are correct that the Brady obligations of police officers were not established until 1995 when the Supreme Court decided Kyles v. Whitley, 514 U.S. 419 (1995). See also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety, 411 F.3d 427, 443-44 (3d Cir. 2005) (explaining that the police's Brady obligations were not clearly established until the Supreme Court's decision in Kyles v. Whitley). But Mr. Dennis has not alleged that he is seeking relief from the two named detectives for Brady violations, and at the motion-to-dismiss stage, the Court focuses on the allegations in the complaint, in which Mr. Dennis has not sought individual liability for Brady violations. To be clear, based on the complaint, the Court declines to re-characterize Mr. Dennis's fabrication-of-evidence and deliberate deception claims simply as a Brady claim.

Therefore, the Court denies qualified immunity at this time. Defendant detectives may, however, reargue their entitlement to qualified immunity at a later stage in the proceedings, if applicable. [7]

### 5. The City is Entitled to Qualified Immunity on the Brady Claim, but the Remainder of the Claim Against the City Survives

In asserting his § 1983 claim against the City, Mr. Dennis must "identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact." Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004). The deliberate indifference standard "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (internal quotation marks omitted). Although the Third Circuit has not squarely addressed the issue, other courts have found that "a municipality cannot be deliberately indifferent to a right that is not clearly established." Thomas v. City of Phila., 290 F. Supp. 3d 371, 387 (E.D. Pa. 2018); see also Szabla v. City of Brooklyn Park, 486 F.3d 385, 393 (8th Cir.

---

[7] The Court further observes that at least some of the specific conduct alleged by the two named detectives could, if true, likely have violated clearly established law in 1992. See Miller v. Pate, 386 U.S. 1, 6-7 (1967).

2007); <u>Townes v. City of N.Y.</u>, 176 F.3d 138, 143-44 (2d Cir.
1999).

Here, part of Mr. Dennis's claim against the City for
municipal liability appears to include liability for a failure
to train officers regarding their duty to disclose exculpatory
evidence. In other words, part of Mr. Dennis's claim against the
City could be read to include liability for the <u>Brady</u> violations
he endured. Defendants appear to have only argued that the City
is entitled to qualified immunity insofar as Mr. Dennis's claim
against the City includes the City's failure to train,
supervise, and discipline officers regarding the responsibility
to provide <u>Brady</u> materials to the prosecutor's office because
the right was not clearly established in 1992. This is correct;
as discussed above, police officers and police departments did
not have clearly established <u>Brady</u> obligations until 1995 when
the Supreme Court decided <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995).
<u>See</u> <u>Gibson</u>, 411 F.3d at 443.

But Mr. Dennis's municipal liability claim encompasses
more than just <u>Brady</u> liability. Yet, it does not appear as
though Defendants have challenged the other aspects of the
municipal liability claim. Therefore, the Court concludes that,
based on the allegations in the complaint, the City is entitled
to qualified immunity insofar as the municipal liability claim
encompasses liability for a failure to train or discipline

regarding <u>Brady</u> obligations. The other aspects of the claim against the City may go forward as pleaded.

## IV.    CONCLUSION

In his action before the Court today, Mr. Dennis seeks redress for the allegedly deliberate wrongdoing regarding the use of fabricated evidence and deliberate deception by the police that occurred at the trial associated only with his 1992 conviction. Importantly, Mr. Dennis's conviction for first-degree murder in 1992 was vacated. In 2016, Mr. Dennis entered a no contest plea to third-degree murder, but as Mr. Dennis only seeks redress for alleged constitutional violations in connection with his 1992 conviction, <u>Heck</u> presents no bar. The Court also concludes that Mr. Dennis's claim is timely and that qualified immunity is not available to the Defendant detectives at this time. Further, the Court concludes that the municipal liability claim will go forward, though the City is entitled to qualified immunity to the extent Mr. Dennis seeks relief based upon <u>Brady</u> violations. For the foregoing reasons, the Court will afford Mr. Dennis the opportunity to argue for the redress he believes he deserves in light of the alleged deprivation of his constitutional rights.

An appropriate order follows.