IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES DENNIS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-2689 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## **MEMORANDUM**

**Judge Juan R. Sánchez**                                                              **April 12, 2024**

Defendant City of Philadelphia has filed two motions in limine seeking to preclude Plaintiff James Dennis from introducing certain testimony and documentary evidence in support of his municipal liability claim. The first motion focuses on witnesses and exhibits related to other overturned convictions. City's Mot. Preclude Convictions 1, ECF No. 118. In that motion, the City seeks to preclude Dennis from calling six witnesses: Patricia Cummings, Anthony Wright, Willie Veasy, Andrew Swainson, Chester Hollman, and Johnny Berry.[1] *Id*. It also seeks to preclude evidence concerning convictions other than Dennis' own conviction, including a 2024 NBC10 article and a judicial opinion by the Honorable Gene E. K. Pratter.[2] *Id*. The City argues this "scattershot" collection of evidence is irrelevant and prejudicial, and includes improper opinion evidence and impermissible hearsay. City's Mem. Supp. Preclude Convictions 1, ECF No. 118.

---

[1]      Because Dennis has since confirmed Cummings will not be available to testify at trial, the motion is moot as to her testimony, which is not discussed. *See* Pl.'s Sur-Reply 3, ECF No. 172. The Court also does not address the City's motion as to Swainson and Hollman because, despite listing these witnesses in its proposed order and motion, the City makes no argument as to either of them in its memorandum. *See* Mot. Preclude Convictions 1. Finally, while the City's proposed order and motion do not mention Berry, the Court includes him in its analysis due to the parties' extensive briefing on his testimony.

[2]      Because Dennis has since confirmed he "has no intention (or any basis)" to move the judicial opinion into evidence, the City's motion is granted as to this piece of evidence.

The second motion "addresses the scope of *Monell* evidence at trial more generally and regardless of whether it relates to other overturned conviction cases." City's Mem. Supp. Preclude Other *Monell* Evidence 1 n.1, ECF No. 119. In that motion, the City seeks to preclude Dennis from introducing the following evidence: (1) a 1977 article series in *The Philadelphia Inquirer*; (2) a 2003 Philadelphia Police Department ("PPD") Integrity and Accountability Office ("IAO") Report; (3) a 2024 NBC10 article; (4) a 2015 COPS Collaborative Reform Initiative Report; and (5) a 2021 Philadelphia Police Advisory Policy, Practice, and Custom Report. Because many of the City's arguments in support of these motions overlap, the Court considers both motions together.

**DISCUSSION**

The Court begins with the City's general arguments before turning to specific witnesses and exhibits. Both motions argue Dennis should be precluded from introducing the foregoing evidence in support of his *Monell* claim because it is too remote and broad. The City claims Dennis' "proposed historical recounting of every criticism lobbed at the PPD in the past 53 years is patently irrelevant to the elements of a municipal liability claim." *Id*. at 5. It asks the Court to "draw a limit on the temporal extent of relevant evidence" for the municipal liability claim, asserting "the Third Circuit has viewed the five years preceding the alleged constitutional injury as the 'relevant time-frame' for municipal liability considerations." *Id*. at 4-5 (citing *Watson v. Abington Twp.*, 478 F.3d 144, 156-57 (3d Cir. 2007)).

This argument mischaracterizes *Watson*. In *Watson*, the evidence of a policy or custom proffered by the plaintiff ended five years before the first instance of alleged misconduct. *Watson*, 478 F.3d at 156. The Third Circuit unsurprisingly took issue with this temporal gap, as the evidence of a policy or custom was "not from the relevant time-frame." *Id*. at 156-57. But nowhere in

*Watson* did the court proclaim five years is generally the relevant time-frame for policy or custom evidence—five years just happened to be the gap between the evidence and the alleged violation in that case.

Similarly, *Watson* does not require relevant policy or custom evidence to precede the violation—the evidence in *Watson* just happened to do so. A plaintiff must demonstrate an "affirmative link" between the policy or custom and the alleged violation to show "the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citation omitted). But while an affirmative link can be shown by evidence predating the alleged violation, *see, e.g.*, *id.* (concluding a plaintiff sufficiently alleges a policy or custom was the proximate cause of his injuries if he "demonstrates [the defendant] had knowledge of similar unlawful conduct *in the past*, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury." (emphasis added) (internal quotation marks and citation omitted)), evidence postdating the alleged violation can also be highly relevant. *Forrest v. Parry*, 930 F.3d 93, 115 (3d Cir. 2019) (explaining defendant's "handling of complaints after [plaintiff's] arrest is highly relevant to demonstrating that it maintained the same practice prior to and at the time of said arrest"). The Court thus declines to conclude evidence is categorically irrelevant simply because it falls outside the City's suggested time-frame of the five years preceding Dennis' trial.

Beyond its temporal argument, the City also asserts Dennis' municipal liability evidence "must be similar in kind to the underlying conduct." City's Mem. Supp. Preclude Other *Monell* Evidence 6. To prevail on his § 1983 claim against the City, Dennis must "establish a municipal custom coupled with causation—i.e., that policymakers were aware of *similar* unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in

part, led to their injury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990) (emphasis added). "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (citation and internal quotation marks omitted). As Dennis' municipal liability argument is clearly rooted in assertions of similar misconduct, his evidence must show a pattern of similar constitutional violations. *See id*., *see also, e.g.*, Pl.'s Resp. Opp'n Preclude Convictions 3-4, ECF No. 132 (asserting Defendants and others engaged in "identical" misconduct before and after Dennis' trial and committed the same constitutional violations in other cases).

Turning to specific witnesses and exhibits, the City first alleges Berry, Veasy, and Wright should be precluded from testifying about the misconduct in their own criminal cases because their cases involve incidents "too factually distinct" from this one. City's Mem. Supp. Preclude Convictions 9. The City notes Wright and Veasy alleged their confessions were fabricated, whereas Dennis did not confess or allege his statement was fabricated. *Id*. The City also asserts Jastrzembski and Santiago were not present at Veasy's interview when the alleged fabrication occurred, and that Berry's case did not involve the detectives at all. *Id*. The City further argues Berry's case is dissimilar because it involved a supposedly suggestive photo array, which is not an issue of liability in Dennis' case. *Id*.

As to the City's arguments that Berry and Veasy's cases did not involve Jastrzembski and Santiago, the City seemingly conflates the use of evidence to show municipal liability versus individual liability. A *Monell* claim requires patterns of similar *conduct*—it does not require the exact same employees to be involved. *See Bielevicz*, 915 F.2d at 851 (policymakers must be "aware of similar unlawful *conduct*" (emphasis added)); *Thomas*, 749 F.3d at 223 ("Ordinarily, a pattern

4

of similar constitutional *violations* by untrained employees is necessary." (emphasis added)). The Court will not preclude evidence in support of Dennis' *Monell* claim solely because some of the alleged violations were connected to different officers.

As to Berry, the City and Dennis characterize his case entirely differently. The City says Berry's case did not involve Jastrzembski and Santiago at all, and attaches Berry's civil complaint which does not mention the detectives. *See* City's Mot. Preclude Convictions, Ex. C, ECF No. 118-3. Meanwhile, Dennis asserts—without citation—that Jastrzembski falsely implicated Berry. Mem. Supp. Admit Other Acts 3-4, ECF No. 106. While Berry's case need not have involved the same detectives as Dennis' for Berry's testimony to be admissible for *Monell* purposes, the Court is troubled that such a fundamental fact is disputed. Because Dennis' explanation of how the misconduct in Berry's case is similar to the misconduct in his case is based on a disputed fundamental fact, and there is no support for Dennis' account, the Court has no firm basis from which to conclude Berry's case is sufficiently similar for municipal liability purposes. The City's Motion is thus granted as to Berry.

The Court reaches the same conclusion as to Veasy. Citing Veasy's civil complaint, the City notes that while "Jastrzembski was originally the assigned detective" in Veasy's case, "by the time of the confession, [Jastrzembski] had turned the case over [to] Detective Domenic Mangoni, and no allegation has been made [that Jastrzembski] was present for the confession." City's Mem. Supp. Preclude Convictions 4. Dennis disputes this, asserting—again without citation—that Jastrzembski and Santiago used coerced statements and improper identification procedures to secure Veasy's conviction. Mem. Supp. Admit Other Acts 3. As with Berry, the Court lacks a firm basis on which to conclude Veasy's case is appropriate evidence for municipal liability purposes. The City's Motion is granted as to Veasy.

As to Wright, no fundamental fact is disputed. The Court is further unpersuaded by the argument that Wright's case is too dissimilar. The City concedes Wright's case involves the allegation that his confession was fabricated to secure his conviction. *See* City's Mem. Supp. Preclude Convictions 9. Similarly, Dennis contends physical evidence in his case was fabricated to secure his conviction. This is sufficiently similar conduct. The City cites no case for the proposition that *Monell* requires such a high degree of similarity that the fabricated evidence at issue must be the exact same type of evidence. Because the alleged fabrication in both was done to secure a conviction, Wright's case is sufficiently similar for *Monell* purposes.

The City also argues Wright's testimony should be precluded because it would be highly prejudicial, as Jastrzembski and Santiago have indicated their intent to invoke their Fifth Amendment privilege against self-incrimination in response to questions about Wright's case due to the pendency of separate criminal proceedings against them regarding their conduct in the case. City's Mem. Supp. Preclude Convictions 13. Because the detectives and Wright were the only ones present during the alleged fabricated confession, the City contends it will not be able to defend themselves from Wright's "one-sided testimony." *Id*. The Court disagrees. The City will still be able to cross-examine Wright, and the jury will be instructed that more than a single incident, i.e., the misconduct in Wright's case, is necessary to support Dennis' *Monell* claim. Tellingly, the City contends Wright's testimony will be unduly prejudicial to their case but also frames Wright's testimony as "one small piece" of Dennis' case. Because the relevance of Wright's testimony is not substantially outweighed by any undue prejudice, the City's motion is denied as to Wright.

Beyond the witness preclusion arguments discussed, the City also presents an array of arguments as to how the testimony of these witnesses should be limited. For example, the City argues the testimony of the challenged witnesses "should be severely limited to their personal

interactions with their underlying criminal investigations." City's Mem. Supp. Preclude Convictions 10. Federal Rule of Evidence 602 states a witness may testify "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Dennis confirms these witnesses' "testimony will be brief and limited to their personal experiences with Jastrzembski and Santiago," which is in accord with Rule 602.  Pl.'s Resp. Opp. Preclude Convictions 4. The City is free to object if the testimony improperly extends beyond the witnesses' personal knowledge.

The City also asserts the witnesses are prohibited from testifying about their "civil litigation, the allegations made in those lawsuits, or the settlement outcomes of any litigation." City's Mem. Supp. Preclude Convictions 11. Dennis confirms he does not intend to introduce evidence of any settlement agreements. Pl.'s Resp. Opp'n Preclude Convictions 5 n.5. And while Dennis does not explicitly address other aspects of the civil lawsuits, he also does not indicate the witnesses will testify about their civil litigation or the allegations therein, but states they will address their personal experiences with the detectives, "which include coerced statements as well as fabricated and concealed evidence." *Id*. at 4-5. The Court notes a history of lawsuits that do not establish liability is insufficient to support a *Monell* claim. *See, e.g.*, *Wooden v. City of Philadelphia*, Civ. No. 19-1054, 2022 WL 17724423, at *4 (E.D. Pa. Dec. 15, 2022) (explaining evidence of prior lawsuits, without more, establishes nothing) (citation omitted). The City is free to object if the testimony improperly extends beyond what Dennis has indicated.

The City next objects that Dennis' use of the outcome of other overturned convictions "only asks the jury to adopt the outcome of these proceedings in place of its own deliberation." City's Mem. Supp. Preclude Convictions 11. But the jury will be deliberating on Dennis' Fourteenth Amendment and *Monell* claims—not on whether his convictions should be overturned.

Indeed, the jury will receive an instruction specifically informing them he *remains* convicted. *See*

Mem., 04/08/2024, ECF No. 189. The City's unfair prejudice argument similarly misses the mark.

Evidence regarding the outcome of other overturned conclusions does not express an opinion

"about the ultimate legal conclusion" or "invade the province of the jury." City's Mem. Supp.

Preclude Convictions 12. As the Defendants themselves have repeatedly emphasized, the jury is

not being asked to find Dennis innocent at all, and the cited cases discussing "ultimate, if not

dispositive" issues are inapposite. *See, e.g.*, *Williams v. O'Connor*, Civ. No. 14-2667, 2017 WL

445748, at *3 (E.D. Pa. Feb. 2, 2017).

The City also seeks to preclude Dennis from introducing specific documentary evidence.

First, the City moves to preclude a 2024 NBC10 news article which reports the City and the PPD

have failed to reinvestigate 40 of 41 homicide convictions that had been vacated "due to

Jastrzembski, Santiago, and the group of homicide detectives with whom they regularly partnered

in the 1990s." Pl.'s Resp. Opp'n Preclude Convictions 6. Dennis does not plan to introduce the

article itself into evidence—he only seeks to introduce the admission that the PPD has failed to

reinvestigate 40 cases. *Id*. 6-7. Dennis argues this fact is probative of the City's deliberate

indifference, but does not explain how a failure to reinvestigate murder convictions today is at all

related to the alleged deliberate indifference at the time of Dennis' conviction. Because Dennis

has not shown how the 2024 NBC10 news article is relevant, the City's motion is granted as to the

article.

Also at issue is a 1977 series of articles from *The Philadelphia Inquirer* which the City

states "summarize[] incidents from homicide investigations" from 1971-1977. City's Mem. Supp.

Preclude Other *Monell* Evidence 3. The City argues the articles are hearsay and should be

precluded. *Id*. at 7. Dennis cites *Estate of Roman* to argue the articles are admissible as *Monell*

evidence at trial. Pl.'s Resp. Opp'n Preclude Other *Monell* Evidence at 4 n.4. The Court is unconvinced. *Estate of Roman* examined an article at the motion to dismiss stage—a very different threshold than what is required for admissible trial evidence. The Court thus grants the City's motion as to the 1977 *Philadelphia Inquirer* articles.

Next is a 2003 IAO Report. The City asserts the report is based on "a review of disciplinary cases from, at the earliest, 2000," and "of 50 case studies summarized, none detail allegations clearly related to homicide investigations, and the nature of the incidents vary widely." City's Mem. Supp. Preclude Other *Monell* Evidence 3. While issued in 2003, the report indicates it builds off of two earlier investigations in 2001. *Id.* Ex. B at 1, ECF No. 119-2. As discussed, the "handling of complaints after [Dennis'] arrest is highly relevant to demonstrating that [the City] maintained the same practice prior to and at the time of said arrest." *Forrest*, 930 F.3d at 115. Dennis' expert, Joseph Pollini, plans to do just that. *See* Pl.'s Resp. Opp'n Preclude Other *Monell* Evidence 8 (explaining "the PPD's disciplinary mechanism in the early 1990s suffered from the same if not more problematic deficiencies that persisted for years thereafter"). Insofar as the 2003 IAO Report is used to demonstrate the City maintained the same alleged deficiencies at the time of Dennis' trial, the report is appropriate for *Monell* purposes. The City's motion is denied as to the 2003 IAO Report.

The City also seeks to preclude Dennis from introducing a 2015 COPS Collaborative Reform Initiative Report on the PPD's use of deadly force. Dennis describes the report as being "highly critical of PPD policies and practices, [and] finding that the disciplinary mechanism is inconsistent, subject to chronic delays, failed to impose meaningful disciplinary or remedial sanctions, and marred by inadequate investigations." Pl.'s Resp. Opp'n Preclude Other *Monell* Evidence 7. But the report itself states it is "a technical report on the current and future states of

deadly force policy, training, investigations, and practice in the Philadelphia Police Department."
City's Mem. Supp. Preclude Other *Monell* Evidence Ex. D at 1, ECF No. 119-4. Dennis does not
otherwise explain how the report is relevant to his case or his specific *Monell* claim stemming
from fabrication of evidence and deliberate deception. Because the report focuses on entirely
different conduct from the conduct at issue here, the City's motion is granted as to the 2015 COPS
Report.

Finally, the City moves to preclude a 2021 Philadelphia Police Advisory Policy, Practice,
and Custom Report. The report analyzes the PPD's "process for civilian complaints against police"
and examined complaints filed between 2015 and 2020. *Id.* Ex. E at 1, ECF No. 119-5. Again,
Dennis does not explain if the report discusses sufficiently similar conduct. It is entirely unclear
whether the examined complaint process between 2015 and 2020 was remotely similar to the
process in place at the time of Dennis' case. The City's motion is therefore granted as to the 2021
report.

An appropriate Order follows.


BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.