```
 1                    UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF PENNSYLVANIA

 3   JAMES DENNIS,
                                   Case No. 2:18-cv-02689-JS
 4              Plaintiff,

 5   v.                            Philadelphia, Pennsylvania
                                   April 25, 2024
 6   CITY OF PHILADELPHIA, et al,  9:16 a.m.

 7              Defendants.

 8

 9                  TRANSCRIPT OF JURY TRIAL - DAY 9
                    BEFORE THE HONORABLE JUAN SANCHEZ
10                  UNITED STATES DISTRICT COURT JUDGE

     APPEARANCES:
11   For the Plaintiff:          Paul M. Messing, Esq.
                                  Kairys Rudovsky Messing Feinberg
12                               & Lin, LLLP
                                  The Cast Iron Bldg Ste 501 South
13                               718 Arch Street
                                  Philadelphia, PA 19106
14
     For the Defendant:          Andrew Pomager, Esq.
15   (City Of Philadelphia)      Daniel Cerone, Esq.
                                  Bailey Axe, Esq.
16                               City Of Philadelphia Law
                                  Department
17                               1515 Arch Street, 14th Floor
                                  Philadelphia, PA 19102
18
     For the Defendant:          Joseph J. Santarone, Jr., Esq.
19   (Frank Jastrzembski)        Joshua W. Brownlie, Esq.
                                  Marshall Dennehey, P.C.
20                               2000 Market Street
                                  Ste 2300
21                               Philadelphia, PA 19103

22   Court Recorder:             Nancy DeLisle/Stacy Wertz

23

24

25
```

1    Transcription Service:        Chris Hwang
                                   Abba Reporting
2                                  PO Box 223282
                                   Chantilly, Virginia  20153
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25

1                                    **<u>INDEX</u>**

2

3                                                       <u>Page</u>

  Verdict                                               38

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Call to order at 9:16 a.m.)

2              THE CLERK:  All rise, Court is now in session, the

3    Honorable Juan R. Sanchez presiding.

4              MR. MESSING:  Good morning.

5              THE COURT:  Good morning, everyone.

6              MR. SANTARONE:  Good morning, Your Honor.

7              THE COURT:  So we have another question.

8              MR. SANTARONE:  Of course.

9              THE COURT:  First thing I think they ask the question

10   is can we go on the record?

11             THE CLERK:  We're on the record.

12             THE COURT:  The question is did George Ritchie

13   (phonetic) testify in the 1992 trial?

14             MR. MESSING:  The answer's no.

15             THE COURT:  Yeah, I know that.  If so, can we see a

16   recording of his testimony?  So I don't know what -- he

17   testified here via video.

18             MR. MESSING:  He testified here via video.

19             THE COURT:  But the deposition you guys took he

20   didn't --

21             MR. MESSING:  I'm sorry?

22             THE COURT:  So he testified here via video.

23             MR. MESSING:  Right.

24             THE COURT:  So I don't know whether they're asking me

25   for the video or the testimony.

1          MR. MESSING:  Oh, I see what you're saying.

2          THE COURT:  Right?  The second question I don't know

3   whether it's related to the first.

4          MR. MESSING:  Well, that was a fairly short video if

5   they want to see it again.

6          MR. SANTARONE:  Well, it says the 1990s new trial.

7   And it says if so, can we see.  So I'm reading --

8          THE COURT:  Yeah.

9          MR. SANTARONE:  -- that to mean they're looking for

10   1992 trial.  So the answer should be, no, he didn't testify.

11          THE COURT:  All right.

12          MR. MESSING:  I think perhaps.

13          THE COURT:  Do you want me to answer no?

14          MR. MESSING:  I think the answer is --

15          MR. SANTARONE:  Well, the answer is no.  He didn't

16   testify.

17          THE COURT:  I know, but they are asking for

18   the -- they should have known, I mean, that was the whole --

19          MR. MESSING:  That was the whole point.

20          THE COURT:  That was the whole point.  And he

21   testified, he should have been -- and I think his whole point

22   is that he was concealed, right, as part of the concealment?

23          MR. BROWNLIE:  Well, Your Honor, if I may, I think

24   the proper instruction would be that on Thomas Bertha, Zahra

25   Howard, and James Cameron were the only eyewitnesses to testify

1    at the criminal trial.

2            THE COURT:  That's not what they're asking.

3            MR. MESSING:  Yeah, it's -- may I make a suggestion,

4    Your Honor?

5            THE COURT:  Yeah, I don't think I could answer it

6    otherwise because --

7            MR. MESSING:  I think the appropriate answer to this

8    question is Mr. Ritchie did not testify at the 1992 trial.  Is

9    the jury asking to see the recording of his testimony that was

10   shown at this trial and just find out if that that's what they

11   want.

12           MR. SANTARONE:  And I would object to that because it

13   says if so.  It's obviously referring to the first question.

14   So I don't want to give them another thing that they could

15   possibly be asked to take a look at.

16           THE COURT:  All right, but you agree that I could

17   tell them that he did not testify at the 1992 trial?

18           MR. SANTARONE:  It's true, yeah.

19           THE COURT:  You agree?

20           MR. MESSING:  And -- I -- I mean --

21           MR. BROWNLIE:  Well, because the Commonwealth did not

22   call Mr. Ritchie and Lee Mandel did not call Mr. Ritchie.

23           THE COURT:  Was he disclosed?

24           MR. BROWNLIE:  I'm sorry?

25           THE COURT:  He was disclosed.

1          MR. BROWNLIE:  He was disclosed, yes.

2          MR. SANTARONE:  Oh, yeah, he was disclosed.

3          MR. BROWNLIE:  So neither party called Mr. Ritchie to

4    testify at the 1992 trial.  That's my concern.

5          MR. SANTARONE:  That is a good way to put it.  I

6    agree with that.  Neither party called him to testify at the

7    1992 trial.

8          MR. MESSING:  If I may, Your Honor?

9          THE COURT:  Yes, you may.

10          MR. MESSING:  I think it's important when a jury asks

11    a question to simply answer the question directly.  The answer

12    to the first part of this question did the -- did George

13    Ritchie testify in the 1992 trial, the only answer should be in

14    our view, no.

15          As to the second thing, if so, can we see a recording

16    of his testimony, I think the answer is the only recording of

17    his testimony was already played at this trial.

18          THE COURT:  Okay.

19          MR. MESSING:  Period.  No other witnesses, no who

20    called, who didn't call.

21          THE COURT:  Well, I think that the answer to the

22    first question I agree with Mr. Santarone, Attorney Santarone.

23    The answer to the first question renders the second question

24    moot unless they ask again.

25          So but you agree that the answer to -- so the answer

1   to the question is, no, I know that because he didn't testify.

2   That's the point.

3            MR. SANTARONE:  I agree, but I agree --

4            THE COURT:  Now why he didn't testify is the

5   question.

6            MR. SANTARONE:  Right, neither party called him at

7   the criminal trial.

8            THE COURT:  But I think part of his theory is that he

9   was not -- was concealed, right?

10           MR. MESSING:  Yes.

11           MR. SANTARONE:  He wasn't.

12           MR. MESSING:  He was concealed.

13           THE COURT:  Well, why does the jury has that it

14  wasn't?

15           MR. BROWNLIE:  Weren't they shown the line-up order?

16           MR. SANTARONE:  He was at the -- yeah, I mean, he

17  was -- his -- Mandel had his name he was in the line-up.

18  Mandel didn't call him and Mandel was questioned about that at

19  one of the post jobs to Dr. Visic (phonetic) and he didn't call

20  him.  He said I thought he was -- I thought he was going to

21  identify my client.  I didn't know what he was going to.

22           MR. MESSING:  Your Honor, they're asking to answer a

23  simple question with facts that may lead to jury confusion.  I

24  think the question should be simply be answered, period.  That

25  is the I believe appropriate thing to do.

1          THE COURT:  Why answer at all because they supposed

2     to remember the testimony, the trial testimony?

3          MR. MESSING:  That -- one option is not to answer it.

4          THE COURT:  Right.

5          MR. MESSING:  But I think the honest answer is no.

6     He did not -- no, he did not testify at the 1992 trial, period.

7          THE COURT:  But he never gave testimony in this Court

8     that he testified in the 1992 trial.

9          MR. MESSING:  He didn't know about the trial.  He

10    didn't even know anybody had been arrested.  So how that

11    happened, whether he was concealed as we have evidence that has

12    been presented or whether he, you know, that his Mr. Dennis'

13    lawyer should have known about him is not their question.

14         THE COURT:  Well, he was at the line-up.  He was at

15    the line-up.

16         MR. MESSING:  He wasn't at the line-up.  He's just on

17    a list of people -- looks like 40 or 50 people that were

18    ordered to be admitted to the prison if they showed up.  I

19    don't know who showed up.

20         MR. BROWNLIE:  No.

21         THE COURT:  Could you show me what?

22         MR. MESSING:  Sure.  It's an order --

23         THE COURT:  Could you show me -- Santarone --

24         MR. MESSING:  Do you know what exhibit it is?

25         MR. SANTARONE:  I'm looking for that right now.

1          MR. MESSING:  It is a standard order that's signed by

2   a judge granting permission for people --

3          THE COURT:  Well --

4          MR. MESSING:  -- to be admitted to the prison to view

5   line-ups.  There must be, I don't know 35, 45 people on that

6   list.

7          MR. BROWNLIE:  If I may?  So, Your Honor, Mr.

8   Ritchie's original statement was produced to Lee Mandel.  In

9   that statement, that interview record I should refer to it as,

10  contains the statement that Mr. Messing is relying upon.  I

11  would have recognized that guy had I seen him again.

12         So that information was produced to Lee Mandel.  Lee

13  Mandel made -- exercised his discretion and the representation

14  of Mr. Dennis and decided not to call Mr. Ritchie.

15         And there's evidence in the record, the jury has not

16  seen it, but his decision was based on a fear that Mr. Ritchie

17  may identify James Dennis.

18         THE COURT:  But --

19         MR. BROWNLIE:  So the information was produced to

20  him.  So I think it more accurately reflects this record to

21  instruct the jury that neither party called Mr. Ritchie to

22  testify in 1992.

23         MR. MESSING:  This is outside the record.  This is an

24  inappropriate response to a very simple --

25         THE COURT:  Right.

1              MR. MESSING:  -- straightforward question.

2              THE COURT:  Attorney Messing, I agree with you

3    because I -- I'm very cautious in answering -- giving an answer

4    that's beyond the question.

5              So but -- so, I'm just going to answer the question.

6    And you both agree that I could tell them or I could tell them

7    nothing, but I could tell them that George Ritchie did not

8    testify in the 1992 trial?

9              MR. MESSING:  Yes, and I think -- I don't even know

10   that this --

11             MR. BROWNLIE:  Our position, Your Honor, would be

12   either instructing them that nobody called him or not answering

13   the question and saying the jury should --

14             THE COURT:  But that's not the question they posed.

15   Let me put the question to you.  Did George Ritchie testify in

16   the 1992 trial?

17             They're not asking me did anybody fail to call him,

18   who was responsible for calling him, was -- did the Defendant

19   have the ability to call him at that time?

20             The question is, and I agree with Attorney Messing on

21   this point, did George Ritchie testify in the 1992 trial, which

22   you all agree he did not.

23             MR. BROWNLIE:  He did not.

24             THE COURT:  Okay, so I'm just going to tell him that

25   he did not testify in the 1992 trial.

1    MR. MESSING:  My suggestion, Your Honor, would be to

2  simply write it out and send it back.

3    THE COURT:  No, that's what I'm going to do.

4    MR. MESSING:  Yeah.

5    THE COURT:  I'm going to answer the question.  All

6  right, I'm going to -- I have answered the question.  I'm going

7  to ask my deputy to make -- this is what I said.  George

8  Ritchie did not testify in the 1992 trial, period.  I'm not

9  answering any other question.

10    Make a copy and give it to them.  And make sure you

11  recover this back.  You give them a copy, yes.  All right.

12    MR. MESSING:  I'll be back in my office.  I made it

13  in eight -- under eight minutes today.

14    THE COURT:  That's fantastic.  Can you make under

15  five?

16    MR. MESSING:  No.

17    THE COURT:  Did you sprint?

18    MR. MESSING:  You're try to do me in, aren't you?

19    THE COURT:  Well.

20    MR. MESSING:  I got to run here.  Security line is

21  what held me up.  Some guy had a metal plate.

22    THE COURT:  Oh, really?

23    MR. MESSING:  Yeah.

24    THE COURT:  I didn't know that.  Okay, then hang

25  around for a little bit longer.  I don't know where this is

1  going.

2           MR. MESSING:  I'll stay for 15 minutes just in case I

3  have another question.

4           THE COURT:  Yeah.

5           MR. MESSING:  Then I'll go back to my office.

6           THE COURT:  All right, no problem.

7           MR. MESSING:  Does that sound okay?

8           THE COURT:  That sounds fine, Mr. Messing, but get

9  here under 10 minutes.  May I see you at sidebar?

10      (Sidebar conference off the record, not transcribed)

11          THE COURT:  They are saying the trial --

12          MR. MESSING:  I'm sorry, I didn't get the copy.  Is

13  there a copy?  Sure.

14          THE COURT:  Yeah, she's going to get you, yeah.

15          MR. MESSING:  Okay.  I like to collect these notes.

16  Thank you.  Trial exhibit is incorrect.  Can we get the Charles

17  Thompson statement?

18          MR. SANTARONE:  Charles Thompson?

19          MR. MESSING:  What did we send them?

20          THE COURT:  We sent them --

21          MR. MESSING:  (Indiscernible) interview.  They may be

22  referring to the 1996 statement.  Yeah, that was --

23          THE COURT:  I don't know what -- well, you gave them

24  a statement, right, the original?

25          MR. SANTARONE:  The 28 statement.

1          MR. MESSING:  And --

2          MR. SANTARONE:  That is significant.

3          MR. MESSING:  And 29 was sent out, too, right?

4          MR. BROWNLIE:  The --

5          THE COURT:  29 was not sent out.

6          MR. BROWNLIE:  29 was not sent out?

7          MR. MESSING:  Why not?  It was on the list.  It was

8  admitted.

9          THE COURT:  They have everything, don't they?

10  They're saying the trial Exhibit 28 isn't in the material.

11          MR. BROWNLIE:  Your Honor, my apologies, Your Honor.

12          THE COURT:  Yeah.

13          MR. BROWNLIE:  Both 28, Charles Thompson's original

14  statement and Exhibit 29, Charles Thompson 1996 affidavit are

15  both on -- should be on the list.

16          THE COURT:  Are on the -- so can I tell them that --

17          MR. BROWNLIE:  They're on my list, so my assumption

18  is that they're on that USB drive because I copied this right

19  from that drive.

20          THE COURT:  Oh, do you have the flash?  Could you

21  double-check that it's on it?

22          MR. BROWNLIE:  They have the flash.

23          THE COURT:  We didn't -- they don't need the flash.

24  Do they?  We just --

25          THE CLERK:  (Indiscernible) only transferred the

1    first exhibit and then, we gave them the flash drive.

2                    THE COURT:  All right.

3                    MR. MESSING:  May I make a suggestion to avoid

4    confusion?

5                    THE COURT:  Yes.

6                    MR. MESSING:  You have already been provided with

7    Exhibit 28, the interview with Charles Thompson on November

8    8th, 1991 and Exhibit 29, the statement from Charles Thompson

9    dated January 24th, 1996.  That way, if they don't have both of

10   them, they'll let us know.

11                   THE COURT:  Yeah, okay, I think that's a good

12   suggestion.

13                   MR. BROWNLIE:  My concern is that perhaps well --

14                   MR. MESSING:  They have it back there.

15                   MR. BROWNLIE:  28 and 29 are both Charles Thompson

16   statements so I'm wondering if they're looking for something

17   that is not -- maybe they're confusing --

18                   MR. MESSING:  Well, that -- if the judge says these

19   are the two you have --

20                   MR. BROWNLIE:  I understand.

21                   MR. MESSING:  -- they'll let us know if they don't.

22                   THE COURT:  November 8th is the 28, right, 8 --

23                   MR. MESSING:  Yeah, Exhibit 28 is the statement dated

24   November 8th, 1991.  And Exhibit 29 is a statement of Charles

25   Thompson dated January 24th, 1996.

1               THE COURT:  Okay.

2               MR. MESSING:  They should have both of those.  If

3       they don't, let us know.

4               THE COURT:  All right, let me write that down.

5           (Pause)

6               THE COURT:  Okay, so you have been provided both of

7       Charles Thompson's statements.  Exhibit 28 is statement of

8       November 8th, 1991.  Exhibit 29 is his January 24, 1996

9       statement.  That answers the question.

10              MR. MESSING:  You want to add if you don't have

11      either of these exhibits, please let us know and they will be

12      provided?

13              THE COURT:  I think that's fine.

14          (Counsel confer)

15              THE COURT:  Okay, I added that.  Here it's --

16              MR. MESSING:  I'm going to wait for another 15

17      minutes the way things are going.

18              THE COURT:  Yeah, I think you better wait.

19              MR. MESSING:  Yeah.

20              THE COURT:  Stacy, could you make a copy and Nancy?

21      All right, thank you so much.

22              MR. MESSING:  Can Mr. Dennis and us be excused?

23              THE COURT:  Disappear from the courtroom?

24              MR. MESSING:  What's that?

25              THE COURT:  Do you want to leave the courtroom?  Yes,

1    you could.

2           MR. MESSING:  Yeah, I'm going to stick around the

3    vicinity for 15 or 20 minutes.

4           THE COURT:  Yeah, that's fine, but you got to be here

5    quick if I have another question.  And I suspect we're going to

6    have a lot of questions.

7           MR. MESSING:  Maybe.

8           THE COURT:  That's fine.  You don't have to hang out

9    here with us.

10        (Recess taken at 9:36 a.m., recommencing at 9:39 a.m.)

11          THE CLERK:  May I ask for USB?

12          THE COURT:  Yeah, ask them for the USB.

13          MR. BROWNLIE:  I'm confident everything was on it, so

14   perhaps it's a technological issue.

15          THE COURT:  It could be.

16          MR. MESSING:  I mean, the other option would be to

17   just give them a copy of 28 and 29.

18          THE COURT:  True, we could do that.

19          MR. BROWNLIE:  I can pull the --

20          THE COURT:  Can you pull them out?

21          MR. BROWNLIE:  Yes.

22          THE CLERK:  Clarified as well.

23          THE COURT:  Okay, they have clarified, okay.  All

24   right, they in the place of trial Exhibit 28, the attachment is

25   Anthony Overstreet interview, Exhibit 19.

1          MR. MESSING:  Oh, it's all --

2          THE COURT:  Page 307.

3          MR. BROWNLIE:  I'm going to check right now, Your

4   Honor.

5          THE COURT:  So okay.

6          MR. MESSING:  Technology is not my friend.  I'm sure

7   Mr. Brownlie did his best, but.

8          THE COURT:  Here.

9          MR. MESSING:  May I suggest in the meanwhile to --

10          MR. BROWNLIE:  I think they're misusing the

11   technology, because 28 on USB is Charles Thompson's.

12          MR. MESSING:  Yeah.

13          MR. BROWNLIE:  I can pull the hard copies, Your

14   Honor, if you'd like.

15          THE COURT:  Pull the hard copies, but can we get our

16   IT guy to come in and show them how to retrieve the

17   information?  We didn't do that because it happened late, but

18   call -- all right and give me for now give that, but I'm going

19   to tell them that we going to -- I'm going to interrupt at some

20   point and have Ed Morrissey (phonetic), who's our IT, show them

21   how to retrieve the documents in other words how to view them.

22          MR. MESSING:  Right.

23          THE COURT:  It's very simple, but if they're

24   not -- they don't know how to use the technology.

25          MR. MESSING:  You know, I'm always a little concerned

1    with an outside party going into the deliberation room.

2              THE COURT:  I could do it here in front of everybody.

3    I could bring him out and do it in front of everybody.

4              MR. MESSING:  May I make a suggestion?  Send them

5    back Exhibits 28 --

6              THE COURT:  We're going to do that, yes.

7              MR. MESSING:  -- hard copies?

8              THE COURT:  We're going to do the hard copies.

9              MR. MESSING:  And ask them if they're having any

10   further difficulties retrieving information that you will then

11   bring an IT person to help them.  And we can have him do it

12   here.

13             THE COURT:  That's fine.

14             MR. BROWNLIE:  IT should go in or they should not go

15   in.  I don't think it's --

16             THE COURT:  No, I think it's fine.  I -- normally I

17   do it before I send them out.

18             MR. MESSING:  Yeah.

19             THE COURT:  Here, you guys were not ready with the

20   review of the flash and that is the hiccough here, but.

21             MR. BROWNLIE:  I don't have paper clips, Your Honor,

22   I apologize.

23             THE COURT:  All right, we have here.

24             MR. MESSING:  Is that --

25             THE COURT:  So you could ask them if they continue to

1    have problems with the technology.

2              MR. MESSING:  91 and 96?

3              MR. BROWNLIE:  Yeah, 28 and 29.

4              MR. MESSING:  Thank you.

5              THE COURT:  All right, hang on.

6              MR. MESSING:  The only thing I know how to do is

7    reboot, which works like 95 percent of the time.

8              MR. BROWNLIE:  I'll have to double-check.  I just

9    pulled it out (indiscernible).

10             MR. MESSING:  Yeah.

11        (Counsel confer)

12        (The Judge confers with the Clerk)

13             MR. BROWNLIE:  Your Honor, the exhibits are correct

14   on the flash drive if you want to take it back?

15             THE COURT:  You could tell them that, that the

16   exhibits on the flash drive are correct.

17             MR. BROWNLIE:  I checked them twice.

18             THE COURT:  All right.

19             MR. MESSING:  You have 28 and 29 there with you?

20             THE COURT:  Yes.

21             MR. MESSING:  Great, thank you very much.  Maybe I'll

22   stick around for another 15 or 20.

23             THE COURT:  All right, you could keep giving yourself

24   15 minute extensions.

25             MR. MESSING:  Well.

1          THE COURT:  To hang around here.

2          MR. MESSING:  I consider this Court extensions to be

3   honest with you because I would have left a long time ago.

4          THE COURT:  Huh?

5          MR. MESSING:  I serve at the Court's pleasure to a

6   point.

7      (The Judge confers with the Clerk)

8          THE COURT:  Okay, hang around.

9          MR. MESSING:  I'm hanging.

10          MR. BROWNLIE:  Thank you, Your Honor.

11      (Recess taken at 9:43 a.m., recommencing at 12:34 p.m.)

12          THE COURT:  Good.

13          MR. MESSING:  Do I need Mr. Dennis in here for this?

14          THE COURT:  I think you should bring him in.

15          MR. MESSING:  Okay.

16          THE COURT:  I have my copy.

17          MR. MESSING:  Do I need to bring him in for verdict

18   or that's --

19          THE COURT:  No, no, no, it's no verdict.  It's a

20   question.

21          MR. MESSING:  Okay.

22      (Pause)

23          THE COURT:  Why don't you read the question, Attorney

24   Messing?

25          MR. MESSING:  I will read the question.

1      THE COURT:  Okay, so the question is can you have

2  fabrication by omission?

3      MR. MESSING:  I think the answer is you know --

4      THE COURT:  The answer's no.

5      MR. SANTARONE:  The answer's no.

6      THE COURT:  The answer's no because it's one or both

7  of Defendant created, created or made up false evidence.  That

8  is known as fabrication or tampered with.  This might be the

9  result of the fabrication.

10      MR. MESSING:  I'm sorry, could you repeat that?

11      THE COURT:  So the -- I already gave them the

12  instruction.

13      MR. MESSING:  Right.

14      THE COURT:  Fabrication, what it means.  It has a

15  particular meaning in the law.  One or both of the Defendants

16  created or made up false evidence.  This is known as

17  fabrication.  Concealment, it's the same thing.  They haven't

18  asked about concealment, but --

19      MR. MESSING:  Yeah.

20      THE COURT:  -- it's an affirmative act.  It's not by

21  omission.

22      MR. MESSING:  Well, I -- yes and no because if you

23  think it through, if they fabricated, for example, the

24  incriminating evidence that Charles Thompson gave and never

25  told anybody, which obviously they didn't, so I think it's a

1    little more complicated than that.

2            I think the best way to handle this would be to

3    simply tell the jury that they have been instructed and have

4    with them the instructions of the law governing this case,

5    which they are to apply to the facts of this case, period.

6            I think we -- I think it's a mistake because we don't

7    know what their thinking is and we don't know how they're

8    analyzing this issue.

9            I think the correct response to a note like this is

10   simply to say I -- the Court had provided the instructions to

11   you.  You have a copy of the instructions.  And you are to

12   comply -- you are to apply those instructions to the facts of

13   this case as found by the jury, period.

14           I don't think we -- I don't think it's appropriate to

15   start interfering with what their thought process is.

16           THE COURT:  Well, I don't know what their thought

17   process is --

18           MR. MESSING:  That's right, we don't.

19           THE COURT:  But the question is -- the question can

20   you have fabrication by omission?  So you're right.  One option

21   is for me to point them to the charge.  The charge defines

22   fabrication as created or make false evidence.

23           The other thing is that I could bring them back and

24   read the charge to them again.  They have it, but I'll read it.

25           MR. MESSING:  I think it's enough to tell them that

1    they have the charge.  And that's -- you've given them the law

2    of the case.

3              THE COURT:  Let me hear from Attorney Brownlie?

4              MR. BROWNLIE:  Your Honor, the answer's no.  I mean,

5    we talked about being concise this morning and responsive to

6    the jury's questions given the law that has been charged to

7    them, the instructions that they have.  The answer is no.

8              THE COURT:  Yeah.

9              MR. BROWNLIE:  And I don't think we should do

10   anything to tinker with the thought process of the jury.  And

11   the only way to assure that is to simply tell them to --

12             THE COURT:  But --

13             MR. BROWNLIE:  -- follow the instructions.

14             THE COURT:  -- I'm not tinker -- if

15   I -- that's -- you're right.  That's one way of handling it

16   to -- we provided them the charge on pages 36 through 38.  They

17   have the elements of and the definition of fabricated evidence.

18             MR. MESSING:  Right.

19             THE COURT:  That's one way of handling it.  The other

20   way is answer the question, which is I think the answer is no.

21   You --

22             MR. MESSING:  It depends on what their analysis is

23   and what their discussions are and we don't know.  And I

24   don't --

25             THE COURT:  How can you have fabrication by omission?

1          MR. MESSING:  Well, let's say that they're thinking,

2     for example one of them says, well, we think that one of the

3     Defendants fabricated something, but we're not sure whether or

4     not they omitted it from the information they gave to the

5     District Attorney or the Defense.

6          That's what they may be thinking.  I don't know what

7     they're thinking.  It's impossible to divine what a

8     deliberating jury is thinking.

9          And that is why you have legal instructions, which

10    they should be told to refer to for the law of the case.

11         THE COURT:  Okay.

12         MR. BROWNLIE:  Your Honor, let's be genuine.  This is

13    about George Ritchie.  That's the only fabricated claim that

14    Mr. Messing has asserted with respect to any type of omission.

15         The jury's obviously asking for a clarification on

16    the law, assuming that they're referencing the instructions.

17    The answer is no and we request that they be so instructed.

18         MR. MESSING:  Well actually, I think that comment by

19    Mr. Brownlie Is interesting.  It's -- because that may very

20    well be what they're thinking in which case, that could be

21    fabrication.

22         It could also be concealment.  But then again,

23    Charles Thompson could also be fabrication and then concealment

24    of the fact that they had threatened a witness into falsely

25    incriminating Mr. Dennis.

1          It gets very complicated and I don't think that the

2    Court should give an answer that may end up confusing or

3    misleading the jury.

4          The only answer I think that's appropriate is to

5    simply say you have the legal instructions.  That's the law of

6    the case.  It's up to you to apply the facts to the law.

7          THE COURT:  So, obviously, the -- and this is the

8    benefit of them having the jury instructions --

9          MR. MESSING:  Yeah.

10          THE COURT:  -- in the jury room that they could ask

11    intelligent questions based on the instructions.  And -- but

12    the instructions, you know, I think the omission could

13    be -- because omission is something was excluded.

14          MR. MESSING:  I'm sorry, the omission?

15          THE COURT:  That's just the end result, that's the

16    end result of potentially what happened.  It's not the

17    definition of fabricated evidence.

18          MR. MESSING:  Yeah, but they're thinking through

19    that.  And I don't think that counsel or the Court should do

20    anything to interfere with that.  You've given the legal

21    instructions.  That's what is required and that's all that's

22    required.

23          THE COURT:  Okay, this is the page that they had 36

24    through -- yeah, that's right.  Page 36, 37, and 38, right?

25    This is the corrected one?

1          THE CLERK:  Yes, correct.

2          THE COURT:  All right.  All right, I -- you know, I

3     don't want to intrude too much.  I think Mr. Messing has a

4     point.

5          I think the answer is no, but I think in an abundance

6     of caution, the best thing I could do is to either bring them

7     and read the charge or tell them that they have the

8     legal -- the instructions containing the legal elements of the

9     term fabrication of evidence on pages 36 to 38.

10         MR. BROWNLIE:  So, Your Honor, if I -- oh, I'm sorry.

11         THE COURT:  Yeah.

12         MR. SANTARONE:  Your Honor, I think that, you know,

13    they have the charge there.  So bringing them back and reading

14    it really I don't see the point of that.  You just tell them

15    what pages it is.

16         But the fact that they have the charge and they're

17    still asking this question can you have fabrication by

18    omission, the answer is just no without any other explanation.

19    Who knows what they're thinking, but it doesn't make a

20    difference because the question's the question.  And the

21    answer's no.

22         THE COURT:  All right.

23         MR. MESSING:  It does make a difference.  I agree

24    with Mr. Santarone that sending a note back telling them to

25    refer to the legal instructions is fine.

1          But again, we don't know what they're thinking.  We
2     don't know what the discussions are.  We don't know what their
3     analysis of the facts are.

4          And it would be a mistake, I believe, to tinker with
5     that.  I think they should simply be told to refer to the
6     instructions that define and you can say both the fabrication
7     and concealment of evidence, whatever the Court wishes, but
8     they have the instructions there.  And they know where they
9     are.  So that's that.

10          THE COURT:  I don't want to imply one way or another
11     that the answer's yes.

12          MR. BROWNLIE:  That's the problem.

13          MR. MESSING:  That's --

14          THE COURT:  You know, that the answer's yes, but I
15     think that so because -- so I -- this is -- because if I don't
16     answer the question potentially, I'm -- potentially they could
17     say or take it as, okay, fabrication means omission is
18     possible.

19          MR. MESSING:  Well --

20          THE COURT:  Don't you think?

21          MR. MESSING:  -- I think they have to look at the
22     legal instructions which are, you know, in accordance with
23     established federal law and apply the facts.  They have the
24     legal instructions for the two elements here and for their 1983
25     claims.  They appear in the instructions starting on page --

1          THE COURT:  37, 38.

2          MR. MESSING:  36.

3          THE COURT:  It's really -- oh, 36.  It's really one

4   line that they need to focus on, which is the first element.

5   One or both of the Defendants created or made up false

6   evidence.

7          MR. MESSING:  Well --

8          MR. BROWNLIE:  Your Honor, in the context of this

9   case, regardless of what the evidence is, regardless of what

10  the facts are, under the law, a fabrication claim cannot be

11  supported by omitting evidence.  It's a deliberate act as Your

12  Honor has pointed out.

13         THE COURT:  Yeah.

14         MR. BROWNLIE:  So to not answer this question of law

15  in a concise manner, we think would create exactly the type of

16  inference that Your Honor is concerned with.

17         MR. MESSING:  And again, I think the instructions

18  cover all of this.  It --

19         THE COURT:  I know, but --

20         MR. MESSING:  The instructions cover willfulness,

21  reckless disregard --

22         THE COURT:  But they're not asking about willfulness

23  disregard.  That's recklessness.  They're asking about

24  omission.

25              And I think the point 1 of the instructions gives us

1    an -- gives them an answer, I think, which means created or

2    made up false.  They have to have created or made up false

3    evidence.

4          MR. MESSING:  We don't know what the jury's thinking.

5    And I think that anything other than reading the law to them

6    would be erroneous.  And I would ask the Court to simply refer

7    them to the instructions as set forth by established federal

8    law.

9          And they have it in front of them.  If you want to

10    read it to them, that's up to the Court, but they have it in

11    front of them.

12          THE COURT:  Very well.  I think I will be debating

13    this.  I think the answer is no, but in an abundance of

14    caution, Attorney Santarone, I'm just going to respond to the

15    note -- where did I put it, respond to the note.

16          And I'm going to be careful, but I'm going to say

17    refer to jury instructions concerning the elements of

18    fabricated evidence on pages 36 to 38 and leave it at that.  I

19    mean, if they read it, point number 1 should give them the

20    answer.

21          MR. SANTARONE:  Right Your Honor, I think they have

22    those instructions.  If they didn't have instructions, that can

23    be different story.  They have the instructions.  They just

24    want to clarify one thing and the answer is no.  That's my

25    position.

1          MR. MESSING:  I think the Court in abundance of

2    caution is taking the correct approach by referring them to the

3    law as instructed.

4          MR. BROWNLIE:  The question is on a clarification of

5    a point of law.

6          THE COURT:  Right, the question --

7          MR. MESSING:  But we don't know what the --

8          THE COURT:  The -- so --

9          MR. BROWNLIE:  Okay.  Your Honor, if the instructions

10   were succinct enough to cover whether or not fabrication can be

11   supported by omission, we wouldn't have gotten the question

12   from the jury.

13         So I think that inquiry should be dispositive here

14   because the ultimate question is whether or not the jury fully

15   understands the principles of law they are to apply to this

16   case.

17         And if they're asking whether or not omission can

18   support a fabrication claim, then they clearly misunderstand

19   that fabrication must be an intentional act.

20         MR. MESSING:  But they may be thinking about

21   something else entirely and by --

22         THE COURT:  So --

23         MR. MESSING:  -- putting them in one direction or

24   another could mislead or confuse.

25         THE COURT:  The other thing I could do to answer the

1    question is say it's in the instructions and point them to

2    paragraph 1, which says fabrication consists of creating or

3    making up false evidence.

4              MR. MESSING:  Well --

5              THE COURT:  That's known as fabrication.

6    Fabrication, in fact, I could just make a declaratory

7    statement.  Fabrication means creating or making up a false --

8    or making up false evidence or making up false evidence.  I

9    think that would answer the question.

10             MR. MESSING:  Again, I think that's the instruction.

11   If the Court wants to refer them to just that passage, that's

12   up to the Court.  I think the instruction and fabrication

13   should be read as a whole, but I --

14             THE COURT:  But that's not the question that they're

15   asking.

16             MR. MESSING:  I understand.

17             THE COURT:  I mean, if I say that, let me think about

18   it.  Let me take five minutes.  I think I need to think on my

19   own.  I think I understand your arguments.

20             And I do think that the question -- the answer the

21   specific question that they ask, can you have fabricated

22   fabrication by omission is no.

23             I do understand your concern, Mr. Messing.  I do

24   understand your concern, but certainly whether I talk to them

25   or I give them the charge, certainly a declaratory statement

1    that fabrication means creating or making up false evidence is

2    succinct enough to answer that question.

3              MR. MESSING:  I think that the Court should just give

4    them the instruction.

5              THE COURT:  No.

6              MR. MESSING:  Why just give them that just one

7    instruction?

8              THE COURT:  Do you disagree with that, do you

9    disagree with that element?

10             MR. MESSING:  I don't know what they're thinking.  I

11   don't know they're applying this to --

12             THE COURT:  All right.

13             MR. MESSING:  -- and what they're thinking.

14             THE COURT:  You got to give me case law that says I

15   cannot do that because I think I could do that and answer the

16   question.

17             MR. MESSING:  I don't --

18             THE COURT:  I clearly can answer the question by

19   saying no, but I'm not going to do that, because that's -- but

20   I think I can take the element and answer the question.

21             MR. MESSING:  Just to restate that element?

22             THE COURT:  And then point them to the instruction

23   and say read the instruction, but fabrication means that.

24             MR. MESSING:  That makes sense if you want to do it

25   that way.

1          THE COURT:  Okay.

2          MR. MESSING:  And I don't think you need to bring

3    them in for that.  I think you could just send it back as far

4    as I'm concerned.

5          THE COURT:  All right.  Give me five minutes.  I want

6    to be careful.  I'll be right back.

7          MR. MESSING:  Okay.

8          THE CLERK:  All rise.

9       (Recess taken at 12:52 p.m., recommencing at 1:03 p.m.)

10         THE COURT:  Okay, so I don't think we have anything

11   in the 3rd Circuit that tells us and defines fabricated

12   evidence a little bit better than what the instruction is.

13         I think that Mr. Messing has a point.  And the point

14   is well taken because omission can be part.  It all depends on

15   the context.

16         Omission can be part of the fabricated evidence.

17   Let's say, for example, you have a spreadsheet.  And you have

18   lied about the numbers and you omitted certain numbers to look

19   the numbers better.

20         That is fabricated evidence, but it contains some

21   element of omission.  Omission by itself is not enough to be

22   fabricated evidence, but it's not clear from here as Mr.

23   pointed -- Mr. Messing has pointed out, it's not clear from the

24   question what the jury is thinking.

25             And I think that I should be cautious and just point

1  them back to the elements and maybe they'll have another

2  question later on.

3          But this is what I'm going to tell them.  You have

4  the legal instruction with the elements of fabricated evidence

5  on pages 36 and 38, period.  Nothing more.  And that will go

6  out.

7          MR. MESSING:  Okay, I'll wait here --

8          THE COURT:  Okay?

9          MR. MESSING:  -- in case they have a follow up.

10         THE COURT:  Yeah, they're going to have a follow up.

11         MR. MESSING:  Well, you never know.

12         THE COURT:  Thanks.  But I think it's an interesting

13  question.

14         MR. MESSING:  Yeah, I mean, because you know, so

15  look, let's take.

16         MR. SANTARONE:  Can I leave?  I don't mean to hear

17  any more examples.  We've got an answer, can I leave?

18         THE COURT:  You could leave.  You don't have to

19  listen to Mr. Messing any more.

20         MR. SANTARONE:  Thank you.

21         MR. MESSING:  (Indiscernible) captive audience.

22  Let's look at Charles Thompson and Latanya Caison (phonetic).

23  They both give statements to the police, but the statements

24  that they give are false either because of they've been coerced

25  (indiscernible) Thompson.

1              THE COURT:  All right, go ahead.

2              MR. MESSING:  Or because (indiscernible) mislead in

3    the case of Caison.

4              And then, in either of them, both kinds of evidence,

5    the falseness of it was an act of omission because they never

6    told him that they forced Charles Thompson and they never told

7    anybody that they took Caison's (indiscernible).

8              And this is assuming evidence in the light most

9    favorable to the Plaintiff.

10             So I think you're right under certain circumstances

11   omission can bring about a fabrication.  And that's why

12   (indiscernible).

13             THE COURT:  Oh.

14             MR. MESSING:  Ask a follow up question it's, you

15   know, have to cross that bridge.

16             THE COURT:  Right, okay.  You don't have to listen to

17   him anymore.

18             MR. MESSING:  I'm sorry, I didn't hear what you said.

19             THE COURT:  All right.  Yeah, we're fine.  Don't go

20   too far.

21             THE CLERK:  All rise.

22             THE COURT:  But just a comment, I think I'm one of

23   the few judges who sends the jury instructions out.

24             MR. BROWNLIE:  Generally, I think so.

25             THE COURT:  But I think it's a good thing to send the

1    instructions out because you get better questions.

2            MR. MESSING:  Yeah.  I always advocate sending them.

3            THE COURT:  Yeah, I think so.  This is an interesting

4    question.

5            MR. MESSING:  (Indiscernible.)

6            THE COURT:  I'm.

7            MR. MESSING:  (Indiscernible.)

8            THE COURT:  Oh, thanks.  All right, thanks.

9        (Recess taken at 1:07 p.m., recommencing at 2:18 p.m.)

10           THE CLERK:  All rise.

11           THE COURT:  I think we got a verdict.

12           MR. MESSING:  Sounds like one.

13           THE CLERK:  Bring them in?

14           THE COURT:  Yeah, bring them in.  Is Nancy coming

15   with them?  Okay.

16       (Jury enters courtroom)

17           THE COURT:  You may be seated.  Okay, thank you.

18           May -- okay.  Go ahead.

19           THE CLERK:  Members of the jury, please rise.

20   Members of the jury, have you agreed upon your verdict based

21   upon the interrogatories from the Court?

22           THE PRESIDING JUROR:  Yes.

23                            **VERDICT**

24           THE CLERK:  Okay, will the foreperson please answer?

25           Number one, Plaintiff's claim of deprivation of

1   liberty without due process of law and denial of a fair trial

2   under the 14th Amendment Defendant Frank Jastrzembski.

3            A, do you find by preponderance of the evidence that

4   Defendant Frank Jastrzembski denied Plaintiff James Dennis his

5   constitutional rights to due process and a fair trial by

6   fabricating evidence?

7            THE PRESIDING JUROR:  No.

8            THE CLERK:  B, do you find by preponderance of the

9   evidence that Frank Jastrzembski  denied Plaintiff James Dennis

10  his constitutional rights to due process and a fair trial by

11  concealing evidence?

12           THE PRESIDING JUROR:  Yes.

13           THE CLERK:  Defendant Manuel Santiago, do you find by

14  a preponderance of the evidence that Defendant Manuel Santiago

15  denied Plaintiff James Dennis his constitutional rights to due

16  process and a fair trial by fabricating evidence?

17           THE PRESIDING JUROR:  No.

18           THE CLERK:  B, do you find by preponderance of the

19  evidence that Defendant Manuel Santiago denied Plaintiff James

20  Dennis his constitutional rights to due process and a fair

21  trial by concealing evidence?

22           THE PRESIDING JUROR:  Yes.

23           THE CLERK:  Two, Plaintiff's claim of civil rights

24  conspiracy.  Do you find by a preponderance of the evidence

25  that Defendant Frank Jastrzembski conspired to deprive

1    Plaintiff James Dennis of his constitutional rights?

2                THE PRESIDING JUROR:  Yes.

3                THE CLERK:  B, do you find by preponderance of the

4    evidence that Defendant Manuel Santiago conspired to deprive

5    Plaintiff James Dennis of his constitutional rights?

6                THE PRESIDING JUROR:  Yes.

7                THE CLERK:  Three, compensatory damages.  Please

8    state the total amount of damages Plaintiff James Dennis has

9    proven by preponderance of the evidence in accordance with the

10   Court's instructions regarding compensatory damages.

11               THE PRESIDING JUROR:  10,000,000.

12               THE CLERK:  For punitive damages, do you find that

13   Defendant Jastrzembski acted maliciously or wantonly in

14   violating James Dennis's federally protected rights?

15               THE PRESIDING JUROR:  Yes.

16               THE CLERK:  State the amount of punitive damages you

17   award to James Dennis?

18               THE PRESIDING JUROR:  3,000,000.

19               THE CLERK:  Do you find that Defendant Santiago acted

20   maliciously or wantonly in violating James Dennis' federal

21   protected rights?

22               THE PRESIDING JUROR:  Yes.

23               THE COURT:  State the amount of punitive damages you

24   award to James Dennis?

25               THE PRESIDING JUROR:  3,000,000.

1          THE CLERK:  Would you like me to record the verdict,

2    Judge?

3          THE COURT:  Yes.

4          THE CLERK:  Members of the jury, harken unto your

5    verdict as the Court as recorded it in the issue joined in

6    civil action number 18-2689, wherein James Dennis is the

7    Plaintiff and Detective Frank Jastrzembski and Defendant Manuel

8    Santiago are the Defendants.  You have answered the

9    interrogatories as follows.

10         1A, no.  1B, yes as to Frank Jastrzembski.

11         As to Defendant Manuel Santiago, A, no.  B, yes.

12    Interrogatory number 2A, yes.  Interrogatory 2B, yes.

13         Interrogatory number 3, $10,000,000.  Interrogatory

14    number 4A, yes.  4B, $3,000,000.  4C, yes.  And 4D, $3,000,000.

15    And so you all.

16         THE COURT:  Okay, you may seated.  Is there's a

17    motion to poll the jury?

18         MR. SANTARONE:  Yes, Your Honor.

19         THE COURT:  All right.  Members of the jury, polling

20    is just a motion that everybody's entitled to so that each

21    juror could record the verdict individually.

22         So I'm going to come around and ask the presiding

23    juror to stand and the question I will ask is do you agree with

24    the verdict as read by you?  And then, I'll conclude with Juror

25    Number 6.

1          So the presiding juror, do you agree with the verdict

2   as read?

3          THE PRESIDING JUROR:  Yes.

4          THE COURT:  Seat number 2, do you agree with the

5   verdict as read by your presiding juror?

6          JUROR NO. 2:  Yes.

7          THE COURT:  Number 3, do you agree with the verdict

8   as read by your presiding juror?

9          JUROR NO. 3:  Yes.

10         THE COURT:  Number 4, do you agree with the verdict

11  at read by your presiding juror?

12         JUROR NO. 4:  Yes.

13         THE COURT:  And Number 5, do you agree with the

14  verdict as read by your presiding juror?

15         JUROR NO. 5:  Yes.

16         THE COURT:  And Number 6, do you agree with the

17  verdict as read by your presiding juror?

18         JUROR NO. 6:  Yes.

19         THE COURT:  All right, thank you very much.  Members

20  of the jury, let me be brief, but I want to take the

21  opportunity to thank you for being good enough to agree to

22  participate as members of the trial jury in this case.

23         We appreciate the time that you have given away from

24  the jobs, your family, to consider the case and to consider the

25  issues in this case.

1           And as you could see, your presence here allows us an

2    opportunity to bring this matter to an orderly conclusion.  So

3    on behalf of the Court, and on behalf of the attorneys, I want

4    to thank you for your services.

5           Members of the jury, in terms of the case, I want to

6    also in your presence thank the lawyers for their preparation

7    and for working really hard to get the case to you in an

8    orderly fashion.

9           As you well can appreciate, it takes a lot of hard

10   work to get the cases of this nature prepared for you to

11   consider and the lawyers were very professional to each other

12   and to the Court.  And when that happens, I think the matter

13   before you is a lot smoother.

14          A couple other things that I just want to briefly

15   mention.  Number one is that you don't leave your First

16   Amendment rights checked at the door when you preside with a

17   trial.  The press is not here, but sometimes the press may be

18   interested in speaking to jurors.

19          Sometimes the lawyers may be interested in speaking

20   to lawyers.  The decision whether to speak to anyone is

21   entirely yours.  You don't have to speak to anyone, but then

22   again, as I said, you do have a constitutional right.

23          And the only guidance that I could give you is that

24   if, for some reason, you speak to someone else following the

25   case, and the recording of this verdict, please do not discuss

1    anything that was set by your other fellow jurors in the jury

2    room because we maintain the integrity and the secrecy of those

3    proceedings and you don't have to explain your verdict to

4    anyone.

5         So please do not repeat your discussions because

6    those discussions should be kept as secret.

7         Certainly, for example lawyers often like to speak to

8    jurors because they want to learn and they want to know what

9    arguments persuaded them, what arguments did not persuade them,

10   what pieces of evidence did persuade them or not.  And that's

11   totally fine, but what is not fine is to repeat what somebody

12   else said in the jury room.

13        I have some certificate of appreciation that I

14   normally sign and distribute to you.  Based on your request,

15   I'm just going to mail them rather than give them to you

16   personally.

17        And with that, members of the jury, unless there is

18   anything else I need to address with them, they are discharged

19   from further responsibilities with this Court.  Okay.  So you

20   are excused.

21        Thank you very much for your service.  I'm going to

22   ask that the people remain in the courtroom while you exit,

23   okay?

24             THE CLERK:  All rise.

25         (Jury exits courtroom)

1              THE COURT:  Everybody remain in the courtroom,

2     please.

3              MR. MESSING:  Of course.

4              THE COURT:  And --

5              MR. MESSING:  Can Mr. Dennis go back to his family?

6              THE COURT:  Yeah, he can go back his family and

7     congratulations.

8              MR. DENNIS:  Thank you.

9              THE COURT:  Okay, can I speak to the lawyers in my --

10              MR. SANTARONE:  Yes.

11              THE COURT:  -- chambers?

12              MR. POMAGER:  Does that include us, Your Honor?

13              THE COURT:  That includes you, yes.  And wait here a

14     little bit if they don't mind your client's waiting in the

15     courtroom for you.

16              UNIDENTIFIED SPEAKER:  Yeah.  Everybody stay in the

17     courtroom.

18          (Proceedings concluded at 2:30 p.m.)

19

20

21

22

23

24

25

1                           **CERTIFICATE**

2

3

4           I, Chris Hwang, court approved transcriber, certify

5   that the foregoing is a correct transcript from the official

6   electronic sound recording of the proceedings in the above-

7   entitled matter.

8

9

10

11           /s/ *Chris Hwang*

12           _____           May 7, 2024

13           Chris Hwang                    Date

14           Court Reporter

15

16

17

18

19

20

21

22

23

24

25