**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES DENNIS, : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | No. 18-cv-2689 |
| : | |
| DETECTIVE FRANK JASTRZEMBSKI : | |
| and DETECTIVE MANUEL SANTIAGO, : | |
| : | |
| **Defendants** : | |
| : | |

## <u>ORDER</u>

**AND NOW** this _____ day of _____, 2024, upon

consideration of Plaintiff's Motion for Attorneys' Fees and Costs, **IT IS ORDERED** that the

motion is **GRANTED** and defendants shall pay to plaintiff James Dennis fees in the amount of

$1,845,977.50, and costs in the amount of $13,264.43.

**BY THE COURT:**


_____
**JUAN R. SÁNCHEZ, J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAMES DENNIS, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 18-cv-2689 |
| | : | |
| DETECTIVE FRANK JASTRZEMBSKI | : | |
| and DETECTIVE MANUEL SANTIAGO, | : | |
| | : | |
| **Defendants** | : | |
| | : | |

### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff James Dennis, through counsel, respectfully moves the Court pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) for an award of attorneys' fees and costs, and, for the reasons stated in the attached memorandum of law, requests that the Court grant the motion.

Respectfully submitted,


/s/ Jonathan H. Feinberg
David Rudovsky
Paul Messing
Jonathan H. Feinberg
KAIRYS, RUDOVSKY, MESSING
 FEINBERG & LIN LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

*Counsel for Plaintiff James Dennis*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JAMES DENNIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 18-cv-2689 |
| | : | |
| DETECTIVE FRANK JASTRZEMBSKI | : | |
| and DETECTIVE MANUEL SANTIAGO, | : | |
| | : | |
| Defendants | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

## I.  Introduction

Plaintiff James Dennis has litigated his civil rights claims under 42 U.S.C. § 1983 for just shy of six years. Following denial of a motion to dismiss, an interlocutory appeal affirming that denial, defense efforts to stay discovery, the denial of summary judgment motions, and briefing on at least ten defense motions *in limine*, the case proceeded to trial before a jury in April 2024. After nine trial days, on April 25, 2024, the jury returned a verdict in favor of Mr. Dennis and awarded him $16 million in damages. Mr. Dennis is, therefore, a "prevailing party" in a § 1983 action, and, as such, he is entitled to seek "a reasonable attorney's fee." 42 U.S.C. § 1988(b).

Mr. Dennis's counsel are from the Philadelphia civil rights law firm, Kairys, Rudovsky, Messing, Feinberg & Lin LLP (KRMFL): David Rudovsky, Paul Messing, and Jonathan H. Feinberg. Counsel request a total fee award of $1,845,977.50. This request is based on the contemporaneous billing records maintained by each attorney documenting time reasonably expended on this litigation and the reasonable hourly rate charged by attorneys of similar experience and skill in the Philadelphia legal market, as supported by the expert declaration of

Marc J. Sonnenfeld, Esq. Ex. A. Counsel additionally request an award of $13,264.43 for taxable costs spent on the litigation. For the reasons outlined below, these requests should be granted.

## II.    Argument

### A.    Plaintiff is Entitled to a Reasonable Attorney's Fee.

Prevailing plaintiffs in § 1983 actions are entitled to recover attorneys' fees under 42 U.S.C. § 1988. "[I]t is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002). "Prevailing parties" are those who "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A plaintiff need not win on every single claim asserted to recover full fees. Whereas some cases may involve "different claims for relief that are based on different facts and legal theories," *id.* at 434, others, like this one, "involve a common core of facts or will be based on related legal theories." *Id.* at 435. In such cases, "[w]here a plaintiff has obtained excellent results," counsel "should recover a fully compensatory fee." *Id.* "Normally, this will encompass all hours reasonably expended on the litigation." *Id.*

The appropriate amount of fees to award is determined by the "lodestar" method, "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "The lodestar is presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum*, 465 U.S. at 897). The party seeking fees must submit evidence supporting the rates claimed and the hours worked. Mr. Dennis's counsel have provided declarations that describe both the basis for their requested rates and the time they expended on the litigation as outlined in their individual timesheets. *See* Ex. B, Decl. of David Rudovsky; Ex. C, Decl. of Paul Messing; Ex. D, Decl. of

Jonathan H. Feinberg. Counsel have also supported their fee request with the expert declaration of Marc J. Sonnenfeld, who, for 50 years, was a widely respected corporate litigator in the Philadelphia office of Morgan, Lewis & Bockius LLP, and is fully versed on reasonable billing practices in the Philadelphia legal market. Ex. A.

### 1. The Rates Charged are Reasonable

In enacting the fee-shifting provisions in 42 U.S.C. § 1988, Congress intended that civil rights lawyers would be compensated at the same rate as lawyers handling other types of "complex Federal litigation." *Hensley*, 461 U.S. at 430 n.4; *see also City of Riverside v. Rivera,* 477 U.S. 561, 575 (1986) (rates should be "governed by the same standards which prevail in other types of complex Federal litigation, such as antitrust cases"). "The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Washington v. Phila. Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996); *see also Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (citing rates charged by Los Angeles office of multinational firm as comparator for Los Angeles civil rights counsel); *Rosario v. City of New York*, No. 18-4023, 2023 WL 2523624, at *2 (S.D.N.Y. Mar. 15, 2023) (referencing rates of "top New York firms").

This is true even if counsel does not regularly charge the rates requested in a fee application. *See Blum*, 465 U.S. at 895 (endorsing view that courts "must avoid…decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return"); *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006) ("Important public policy considerations dictate that we should not punish an 'under-charging' civil rights attorney."). Fee awards reflect the rate at the time fees are sought, not at the earlier time when work was performed. *Lanni v. New Jersey,* 259

F.3d 146, 149 (3d Cir. 2001); *Damian J. v. Sch. Dist. of Philadelphia*, No. 06-3866, 2008 WL 1815302, at *2 (E.D. Pa. Apr. 22, 2008) (Sánchez, J.).

For Philadelphia attorney rates, courts often consider the Community Legal Services (CLS) fee schedule. *MP ex rel. VC v. Parkland Sch. Dist.*, No. 20-4447, 2021 WL 5177012, at *2 (E.D. Pa. Nov. 5, 2021) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)). The latest version of the schedule was published in January 2023.[1] As with previous versions, it ties rates solely to an attorney's years of experience. That factor is just the "starting point." *Id.* As this Court recognized, focusing on years of experience is underinclusive: "The fee schedule does not take into account the specialized skills and advanced degrees the attorneys bring to their practice, their experience in the particular field…, the size of the law firm, the level of work performed, nor the positions of counsel." *Damian J.*, 2008 WL 1815302, at *2. A broader approach considering all of these factors is consistent with the directive that "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183.

In view of these principles, counsel for Mr. Dennis request rates as follows:

- David Rudovsky: $1,150 per hour
- Paul Messing: $1,000 per hour
- Jonathan H. Feinberg: $725 per hour

All three attorneys are partners with the KRMFL firm. The firm is recognized locally, and nationally, for its litigation of § 1983 cases in the criminal justice field. Since its founding in 1971, the firm has been at the center of numerous lawsuits litigated in Philadelphia addressing

---

[1] The fee schedule is available at: https://clsphila.org/about-community-legal-services/attorney-fees/

claims of systemic constitutional violations in the criminal justice system. *See* Ex. B at ¶ 9(a)-(g).

In addition to these systemic class action matters, the firm has for the past 20 years focused on

litigation concerning issues like those presented in this case: seeking compensation for persons

wrongfully convicted due to law enforcement misconduct. In its initial case in this field, the firm

represented Bruce Godschalk, one of the first persons in Pennsylvania exonerated by post-

conviction DNA testing. After securing an Order from this Court mandating testing, *Godschalk*

*v. Montgomery Cty. Dist. Atty's Ofc.*, 177 F. Supp. 2d 366 (E.D. Pa. 2001), which provided

definitive proof of Godschalk's innocence, the conviction was vacated, and charges were

dismissed. The firm brought civil rights claims that were resolved via a multi-million-dollar

settlement. Since that time, the firm has been involved in similar cases in district courts

throughout the Third Circuit, leading to repeated multi-million-dollar settlements. *See Halsey v.*

*Pfeiffer*, No. 09-1138 (D.N.J.) ($12.5 million settlement); *Wright v. City of Philadelphia*, No. 16-

5020 (E.D. Pa.) ($9.85 million settlement); *Siehl v. City of Johnstown*, No. 18-0077 (W.D. Pa.)

($8.2 million settlement); *Berry v. City of Philadelphia*, No. 19-3699 (E.D. Pa.) ($5.65 million

settlement); *Veasy v. City of Philadelphia*, No. 20-5107 (E.D Pa.) ($5 million settlement); *Miller*

*v. City of Philadelphia*, No. 20-3054 (E.D. Pa.) ($4.6 million settlement); *Thomas v. City of*

*Philadelphia*, No. 17-4196 (E.D. Pa.) ($4.1 million settlement).

In its wrongful conviction litigation, the firm has argued appeals that have established

significant precedents in the Third Circuit on issues frequently arising in such cases. *See Dennis*

*v. City of Philadelphia*, 19 F.4th 279, 290-92 (3d Cir. 2021) (Fourteenth Amendment deliberate

deception claim)[2]; *Halsey v. Pfeiffer*, 750 F.3d 273, 295-96 (3d Cir. 2014) (Fourteenth

---

[2] The importance of this decision to the litigation of this case and the eventual outcome at trial is discussed further below. *See infra* § III.A.2.a.

Amendment fabrication of evidence claim); *Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998) (Fourth Amendment malicious prosecution claim).

Counsel for Mr. Dennis have each contributed to his prevailing party status under 42 U.S.C. § 1988, and the rates they request are justified by their unique skill and expertise.

### a.  David Rudovsky

A summary of Mr. Rudovsky's background, described in detail in his declaration, Ex. B, is as follows: He is a 1967 graduate of New York University Law School and has practiced in the fields of civil rights and criminal defense for 57 years. He is a national leader in the development of § 1983 litigation. Mr. Rudovsky is a co-author of the treatise *Police Misconduct: Law and Litigation*, now in its third edition and the practice guide most widely used by civil rights practitioners nationwide. Since 1987, he has been a Senior Fellow at the University of Pennsylvania Carey Law School where he teaches courses in constitutional criminal procedure, criminal law, and evidence. In connection with this academic appointment, he has authored multiple scholarly pieces on civil rights and the criminal justice system. He has argued two civil rights cases in the U.S. Supreme Court. *See City of Canton v. Harris*, 489 U.S. 378 (1989) (establishing availability of claim against municipality for failing to train, supervise, and discipline employee officers); *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (addressing immunity of U.S. Attorney General for warrantless electronic surveillance).

Mr. Rudovsky is the former President of the Board of Directors of the Defender Association of Philadelphia and the Pennsylvania Institutional Law Project, and he was a founding director of the Pennsylvania Innocence Project. In 1986, Mr. Rudovsky received the MacArthur Foundation Fellowship (often referred to as the "genius award") for his work in criminal justice.

Mr. Rudovsky requests a rate of $1,150 per hour. This rate is $300 more than the CLS fee schedule's suggestion of $735-850 for practitioners with 25 or more years of experience. The upward adjustment, however, is appropriate for at least four reasons. First, because the CLS fee schedule rate for 25-or-more years of practice is the top tier, an adjustment is necessary to avoid overbroad categorization. Otherwise, the same rate would apply to attorneys with 57 years of experience and 26 years of experience, a result inconsistent with market practices. Second, an enhancement of $300 recognizes Mr. Rudovsky's unique skill, experience, and record of achievement, a record unlikely to be duplicated frequently—if ever—by another plaintiff-side civil rights litigator in the Philadelphia market. *See Damian J.*, 2008 WL 1815302, at *2.

Third, the rate is in line with recent awards for practitioners in other jurisdictions with records approaching that of Mr. Rudovsky's. In *French v. City of Los Angeles*, the court adopted a rate of $1,400 per hour for Dale K. Galipo, a Los Angeles based practitioner with 40 years of experience. No. 5:20-0416, ECF 188 at 7 (C.D. Cal. Feb. 21, 2024). And, in *Rosario v. City of New York*, the court adopted a rate of $900 per hour for Nick Brustin, a New York-based practitioner with 28 years of experience. No. 18-4023, 2023 WL 2523624, at *5 (S.D.N.Y. March 15, 2023). Mr. Rudovsky's requested rate of $1,150 is the midpoint between the rates awarded in these cases. Despite 17 years more experience than Mr. Galipo, Mr. Rudovsky does not seek the same rate as Mr. Galipo's to account for the Los Angeles legal market's higher rates. Although the New York legal market where Mr. Brustin practices likewise has higher rates, Mr. Rudovsky's requested rate accounts for his 29 years more experience than Mr. Brustin. Other recent filing and Orders provide further support for Mr. Rudovsky's rate.[3]

---

[3] *See* Decl. of Matthew C. Ziegler, *In re: FTX Trading Ltd.*, No. 22-11068-TJD, ECF 5540 at 2 (D. Del. Bk. Jan. 10, 2024) (describing firm-wide partner billing rates for Philadelphia-based Morgan, Lewis & Bockius as of 2024 as $1,075 – $1,950 per hour); *Craig v. County of*

Fourth, and finally, the rate is reasonable in Mr. Sonnenfeld's expert opinion. Ex. A at ¶ 14. In summary, the rate is lower than what Philadelphia corporate firms charge in 2024 and lower than the rate Mr. Sonnenfeld charged at the time of his retirement in 2021. *Id.* at ¶¶ 12, 14.

### b.  Paul Messing

A summary of Mr. Messing's background, described in detail in his declaration, Ex. C, is as follows: He is a 1973 graduate of Temple University Beasley School of Law and has been a leading trial lawyer and trial skills educator in the Philadelphia civil rights and criminal defense bars for 51 years. Shortly after his graduation from law school, he was hired as a public defender at the Defender Association of Philadelphia. Mr. Messing joined KRMFL in 1993, where he shifted his practice into the civil rights field. In the 31 years since he joined the firm, he has become a recognized expert litigator in multiple subspecialty areas of civil rights practice.

Mr. Messing has broad and varied experience educating lawyers and law students. He was an adjunct professor at Temple University Beasley School of Law for more than thirty-five years, where he taught integrated trial advocacy and criminal law; a visiting professor at the Temple/Tsinghua School of Law LLM Program in Beijing, where he taught evidence and criminal law and procedure; an adjunct professor at Rutgers School of Law at Camden where he taught the criminal litigation clinic; and a clinical instructor at University of Pennsylvania Carey Law School where he taught a course in criminal defense litigation and supervised law students serving as trial counsel for indigent defendants. For nearly three decades, Mr. Messing has served as a course planner and presenter for the Pennsylvania Bar Institute (PBI) developing and

---

*Orange*, No. 8:17-0491, ECF 280 at 6-7 (C.D. Cal. Feb. 21, 2023) (granting $1,075 hourly rate to Washington, D.C., non-profit lawyer with 17 years of experience based on rates lawyer charged while practicing with corporate firm); *Tarlton v. Sealey*, No. 5:15-0451, 2021 WL 10319395, at *3-4 (E.D.N.C. Nov. 5, 2021) (awarding Washington, D.C., corporate partners hourly rates of $920-984, a 20% discount of usual rates, for North Carolina litigation).

administering conferences and seminars relating to criminal defense issues and civil rights litigation. At PBI's invitation, Mr. Messing authored *Police Misconduct: Defending Criminal Cases in Pennsylvania*, a comprehensive practice guide for Pennsylvania criminal defense practitioners addressing the impact of law enforcement misconduct on criminal litigation.

Mr. Messing requests a rate of $1,000 per hour. This rate is $150 more than the CLS fee schedule suggests. However, for the same reasons outlined above regarding Mr. Rudovsky's requested rate, this departure over the maximum level is appropriate. In short, practitioners like Mr. Messing and Mr. Rudovsky, with, respectively, 51 and 57 years of experience, represent singular cases highly unlikely to be duplicated in the Philadelphia market. Further, Mr. Messing seeks $150 per hour less than Mr. Rudovsky to account for his fewer years of experience as a practitioner and his fewer years working in the civil rights field. Mr. Sonnenfeld's expert declaration confirms that the rate requested for Mr. Messing is reasonable. Ex. A at ¶ 15.

### c.     Jonathan H. Feinberg

A summary of Mr. Feinberg's background, described in detail in his declaration, Ex. D, is as follows: he is a 2001 *summa cum laude* graduate of the University of Pennsylvania Carey Law School. Following a judicial clerkship with the Honorable Jan E. DuBois of this Court, he joined KRMFL as only the second entry-level associate the firm had hired in its then 30-year history. Four years later, he was promoted to a name partner in the firm. For the past 22 years, he has focused his practice on civil rights litigation and criminal defense. Mr. Feinberg is an established expert in numerous areas of law, including cases involving wrongful convictions. In recent years, Mr. Feinberg has obtained multiple settlements in large damages civil rights cases that have produced record-breaking awards in the relevant jurisdiction. For example, Mr. Feinberg was co-lead counsel in negotiations conducted over two years before the Honorable David Strawbridge

regarding claims of more than 300 plaintiffs injured during peaceful protests in Philadelphia in June 2020; those negotiations led to damages payouts of $9.25 million, the largest settlement regarding protest activity in Philadelphia history.

Mr. Feinberg is an active participant and leader in the National Police Accountability Project, the country's most prominent organization of legal professionals focused on law enforcement misconduct, with more than 550 lawyer members nationwide. He has served as a member of the organization's board of directors since 2013, and in October 2023, was appointed as its president, a role in which he continues to serve. In 2022, Mr. Feinberg began serving as an adjunct instructor at the Penn Cary Law School, teaching an experiential class he created regarding civil rights litigation and focusing on wrongful conviction claims.

Mr. Feinberg requests a rate of $725 per hour. Although this rate is $10 more per hour than the $630-$715 range suggested for someone with Mr. Feinberg's 23 years of experience, it is $10 less per hour than the $735-$850 rate for someone with just two more years of experience. This intermediate rate recognizes Mr. Feinberg's unique expertise and record of success in the civil rights field, his position as a national leader of civil rights practitioners, and his role as an educator for law students and attorneys on civil rights matters—factors not contemplated by the CLS rate schedule. *See Damian J.*, 2008 WL 1815302, at *2. The rate also accounts for rates awarded to other civil rights practitioners with similar experience in different jurisdictions. In *French*, the Court adopted rates of $975 per hour for John Fattahi, a Los Angeles based practitioner with 17 years of experience, and $800 per hour for Eric Valenzuela and Renee Masongsong, Los Angeles based practitioners with 13 and 14 years of experience. No. 5:20-0416, ECF 188 at 7 (C.D. Cal. Feb. 21, 2024). In *Rosario*, the court adopted rates of $800 per hour for New York based practitioners, Anna Benvenutti Hoffmann and Emma Freudenberger,

with, respectively, 19 and 16 years of experience. 2023 WL 2523624, at *5. These decisions, and others, *see supra* note 4, approved rates substantially higher than the rate requested for Mr. Feinberg for attorneys with substantially less experience than Mr. Feinberg. Accordingly, $725 is a reasonable rate for Mr. Feinberg's work in this case. Mr. Sonnenfeld, likewise, confirms the reasonableness of this requested rate. Ex. A at ¶ 16.

### 2. The Time Billed was Reasonably Expended

Counsel is entitled to compensation for all hours "reasonably expended" on the litigation. *Maldonado*, 256 F.3d at 184. As part of this inquiry, the Court may consider whether counsel obtained "excellent results," *Hensley*, 461 U.S. at 435, the "amount of damages" recovered, *City of Riverside*, 477 U.S. at 574, and the complexity of the legal and factual issues presented in the litigation. *Hensley*, 461 U.S. at 436; *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017).

### a. Time Billed for Paul Messing

Paul Messing seeks compensation for the 1,652.2 hours of work detailed in the timesheet attached to his declaration. This total fairly represents Mr. Messing's role as lead counsel and his intimate involvement in every stage of the case—a case that was a challenging one to pursue. From the outset, taking on the representation presented significant risks due to difficult legal issues and factual complexity. At least two legal issues central to the case were unsettled at the time Mr. Messing was engaged. First, there was an open question as to whether Mr. Dennis had a viable claim for deliberate suppression of exculpatory evidence, with some Judges of this Court rejecting such claims. *See*, *e.g.*, *Berry v. City of Philadelphia*, No. 19-3699, ECF 11 at 2 n.1 (E.D. Pa. Nov. 12, 2019). Second, there was no Third Circuit opinion considering a question addressed favorably in other Circuits regarding so-called two-conviction claims, that is, whether a plaintiff could bring claims challenging an overturned conviction if a plaintiff, like Mr. Dennis,

was convicted a second time after a first conviction was vacated. Additionally, on the facts, litigation of the case required deep understanding of a 30-year-old sprawling murder investigation involving many detectives, witnesses, and a tortured legal history.

Once the case was in litigation, Mr. Messing faced an aggressive defense. The defendants filed a motion to dismiss on multiple grounds, and, after denial of that motion, pursued an interlocutory appeal raising both above-referenced legal issues. After the Third Circuit resolved the appeal in Mr. Dennis's favor, the case returned to this Court where the defendants sought to stay all proceedings due to pending criminal charges against the defendant detectives. Extensive briefing on issues related to the stay followed. Once the Court allowed the case to proceed, defendants sought dismissal of all claims on summary judgment. Once again, the motions were resolved favorably to Mr. Dennis, at which point the case proceeded to trial. Leading up to the trial, the defense undertook extensive efforts to control the scope of evidence introduced to the jury, filing ten motions in limine. Mr. Messing was the principal attorney handling each of these litigation stages, and, at trial, Mr. Messing was the sole attorney presenting the plaintiff's case.

Every step of the case required counsel's skilled advocacy. Those efforts were labor- and time-intensive, and the time was well spent. Mr. Messing obtained two important and path breaking decisions. On the motion to dismiss, the Court accepted Mr. Messing's arguments and issued the first decision within the Third Circuit accepting the concept of a viable claim in the "two conviction" context. *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 429-31 (E.D. Pa. 2019). And, on interlocutory appeal, the Third Circuit endorsed for the first time a due process claim for deliberate suppression of exculpatory evidence. *Dennis v. City of Philadelphia*, 19 F.4th 279, 290-92 (3d Cir. 2021). Establishment of this rule has been critical for other civil rights

plaintiffs litigating similar claims and was central to Mr. Dennis's success at trial, as this is the claim on which the jury found the defendants liable.[4]

Beyond the legal success, the outcome at trial—a large damages award unique among civil rights verdicts in this Court—in the face of a challenging legal landscape and complex factual issues, is compelling evidence of the reasonableness of the time spent by Mr. Messing. *See Rosario*, 2023 WL 2523624, at *2 (noting appropriateness of fee request where "case was particularly challenging to litigate" in that "counsel in effect had to relitigate a decades-old murder trial while fitting Plaintiff's claims into the complex and evolving legal doctrines governing this area of civil rights litigation").

As documented in his timesheets, Mr. Messing's 1,652.2 hours were critical to success on the deliberate deception claim at trial. Importantly, he has used billing judgment and not sought payment for any administrative or clerical tasks, nor has he billed for the time spent by paralegals. Further, although he spent a substantial portion of the litigation developing and litigating a *Monell* claim against the City of Philadelphia, given that this claim was dismissed due to an uncontested Rule 50 motion, he has not sought compensation for that time.[5] In this context, his billed time is reasonable and should be compensated in full. *See* Ex. A at ¶¶ 18-20.

### b.  Time Billed for David Rudovsky

David Rudovsky seeks compensation for 91.4 hours. These hours include time for consulting with Mr. Messing on various legal strategy issues at the time the lawsuit was filed.

---

[4] That the jury did not rule in Mr. Dennis's favor on the separate fabrication of evidence claim is of no relevance to the fee inquiry, as that claim and the deliberate deception claim involved a "common core of facts" and "related legal theories." *Hensley*, 461 U.S. at 435.

[5] The time sheet attached to Mr. Messing's declaration, Ex. C, includes activities devoted to the *Monell* portion of the case, which are highlighted in yellow. The 204.8 hours that fall into this category are not included in the final tabulation of Mr. Messing's hours.

Although Mr. Rudovsky's appearance was not at that time entered in this Court, strategic consultation with his partner was a critical component of the firm's representation of Mr. Dennis and is compensable. *See Cruceta v. City of New York*, No. 10-5059, 2012 WL 2885113, at *4 (E.D.N.Y. Feb. 7, 2012) (citing *Shadis v. Beal*, 692 F.2d 924, 927 (3d Cir. 1982)). Mr. Rudovsky took a central role in the representation during the interlocutory appeal stage, including work on the brief and presenting oral argument to the Third Circuit. Once the case returned to this Court, Mr. Rudovsky assisted Mr. Messing in the litigation of summary judgment and, in advance of trial, consulted regarding evidentiary issues and various trial strategy questions. His billed time is reasonable and should be compensated in full. *See* Ex. A at ¶¶ 21-22.

### c.     Time Billed for Jonathan H. Feinberg

Jonathan H. Feinberg seeks compensation for 122.3 hours. Mr. Feinberg's principal involvement with the case included drafting and editing Mr. Dennis's brief during the interlocutory appeal.[6] His expertise in recent legal developments in wrongful conviction cases allowed for important contributions to that brief. Additionally, Mr. Feinberg provided consultation and strategic advice to Mr. Messing during trial. Since the verdict in Mr. Dennis's favor, Mr. Feinberg has taken lead responsibility for preparing this motion for attorneys' fees and costs and for other post-trial litigation. His billed time is reasonable and should be compensated in full. *See* Ex. A at ¶¶ 23-24.

---

[6] For the same reasons discussed above regarding Mr. Rudovsky, the fact that Mr. Feinberg's appearance was not entered in the Third Circuit does not preclude seeking compensation for this time.

### 3. The Final Lodestar Amount is Reasonable

Mr. Dennis seeks payment to his attorneys as follows:

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| David Rudovsky | $1,150 | 91.4 | $105,110.00 |
| Paul Messing | $1,000 | 1,652.2 | $1,652,200.00 |
| Jonathan H. Feinberg | $725 | 122.3 | $88,667.50 |
| | | **TOTAL** | **$1,845,977.50** |

This requested total is reasonable as it is well in line with, and, indeed, substantially less than, fee awards granted in other comparable cases. *See Rosario*, 2023 WL 2523624, at *6 ($3,795,532.75); *Tarlton*, 2021 WL 10319395, at *6 ($6,226,705.62); *Restivo v. Nassau Cty.*, No. 06-6720, 2015 WL 7734100, at *6 (E.D.N.Y. Nov. 30, 2015) ($4,677,897.50); *Rodriguez v. City of Houston*, 06-2650, 2009 WL 10679670, at *3 (S.D. Tex. Dec. 22, 2009) ($3,475,948.66); *see also* Ex. A at ¶¶ 10, 25-29.[7]

### B. Plaintiff is Entitled to Reimbursement for Taxable Costs.

In addition to a fee award, a prevailing party under § 1988 is entitled to reimbursement for out-of-pocket litigation expenses. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225-26 (3d Cir. 1995); *see also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 102 (3d Cir. 2006) (approving award of costs exceeding $33,000). KRMFL has tracked its expenses throughout the litigation, *see* Ex. E, and seeks reimbursement for the $13,264.43 spent on record collection, deposition costs, investigation, and other miscellaneous costs.

### III. Conclusion

For the foregoing reasons, the Court should grant this motion and enter an Order directing the payment of attorneys' fees totaling $1,845,977.50 and costs totaling $13,264.43.

---

[7] Mr. Dennis requests leave to supplement this filing to seek additional fees for time spent litigating this motion, any additional post-trial litigation, and any appeal.

Respectfully submitted,


/s/ Jonathan H. Feinberg
David Rudovsky
Paul Messing
Jonathan H. Feinberg
KAIRYS, RUDOVSKY, MESSING
  FEINBERG & LIN LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

*Counsel for Plaintiff James Dennis*