# DECLARATION OF DAVID RUDOVSKY

I, David Rudovsky, declare as follows:

1. I am an attorney licensed to practice law in the Commonwealth of Pennsylvania, the U.S. District Court for the Eastern District of Pennsylvania, the U.S. Court of Appeals for the Third Circuit, and the U.S Supreme Court. I submit this Declaration in support of Plaintiff James Dennis's Motion for Attorneys' Fees and Costs. This Declaration is based upon my personal knowledge.

2. I graduated from New York University Law School in 1967. For the past 57 years, I have practiced as a civil rights and criminal defense lawyer.

3. I am a co-author of a treatise on civil rights practice, *Police Misconduct: Law and Litigation,* now in its third edition, which is a leading practice manual for civil rights practitioners. Since 1987, I have been a Senior Fellow at the University of Pennsylvania Carey Law School where I teach courses in constitutional criminal procedure, criminal law, and evidence. I have authored multiple scholarly pieces on civil rights and the criminal justice system, including articles addressing the importance of DNA testing to proving factual innocence in postconviction litigation and the qualified immunity doctrine. *See* Seth Kreimer & David Rudovsky, *Double Helix, Double Bind: Factual Innocence and Postconviction DNA Testing*, 151 U. Pa. L. Rev. 547 (2002); David Rudovsky, *The Qualified Immunity Doctrine in the Supreme Court: Judicial Activism and the Restriction of Constitutional Rights*, 138 U. Pa. L. Rev. 23 (1989)

4. I have argued two significant civil rights cases in the U.S. Supreme Court. *See City of Canton v. Harris*, 489 U.S. 378 (1989) (establishing availability of claim against municipal entity for failing to train, supervise, and discipline employee officers); *Mitchell v.*

*Forsyth*, 472 U.S. 511 (1985) (addressing immunity of U.S. Attorney General for warrantless electronic surveillance).

5. I am the former President of the Board of Directors of the Defender Association of Philadelphia and the Pennsylvania Institutional Law Project, and I continue sit on both Boards.

6. In 1986, I received the MacArthur Foundation Fellowship (sometimes referred to as the "genius award") for my work in criminal justice. I have received other awards, including the Judge Gerald F. Flood Award for Public Interest Accomplishments, the ACLU Civil Liberties Award, the Philadelphia Bar Association Cesare Beccaria Award for Criminal Justice, and the Pennsylvania Innocence Project's Founders Award.

7. My career in the civil rights and criminal defense fields started in 1967 with a Fellowship at the University of Pennsylvania Law School, where I supervised students in one of the first law school clinical programs affiliated with the Defender Association. I was also an assistant defender at that office from 1967 until 1971.

8. In 1971, I was a founding partner in my law firm, Kairys & Rudovsky, which for the past 50-plus years has been a public interest practice, with a focus on civil rights cases under 42 U.S.C. § 1983 and the defense of criminal cases at the trial, appeal and post-conviction stages. The firm is now Kairys, Rudovsky, Messing, Feinberg & Lin LLP, and is the one of the oldest continuously operating private civil rights law firms in the country.

9. Although I have litigated civil rights cases throughout the United States, I have focused my practice on civil rights issues in Philadelphia, and in particular, those related to the criminal justice system. My practice has included class action lawsuits addressing systemic

misconduct in the Philadelphia Police Department and in the Philadelphia's prison system, such as the following:

    a. *Jackson v. Hendrick*, a class action filed in 1971 in the Philadelphia Court of Common Pleas that was in litigation for more than 30 years, and which addressed conditions of confinement and overcrowding in the Philadelphia Prison System. *See Jackson v. Hendrick*, 321 A.2d 604 (Pa. 1974);

    b. *NAACP v. City of Philadelphia*, No. 96-6045 (E.D. Pa.), a class action arising out of the Philadelphia Police Department's 39th District scandal that resulted in a consent decree implementing systemic changes in PPD operations, including reform of the Internal Affairs Division, limits on racial profiling, enhanced training, and supervision of narcotics investigators;

    c. *Bowers v. City of Philadelphia*, No. 06-3229 (E.D. Pa.), a class action challenging overcrowding in the Philadelphia Prisons that resulted in a comprehensive injunction;

    d. *Williams v. City of Philadelphia*, No. 08-1979 (E.D. Pa.), a class action challenging overcrowding and related systemic issues throughout the Philadelphia Prison System, resulting in private settlement agreement;

    e. *Bailey v. City of Philadelphia*, No. 10-5952 (E.D. Pa.), a class action addressing systemic Fourth and Fourteenth Amendment violations, including racially discriminatory practices in the Philadelphia Police Department's stop and frisk practices leading to a consent decree that remains in place;

    f. *Sourovelis v. City of Philadelphia*, No. 14-4687 (E.D. Pa), a class action lawsuit against the City and the District Attorney's Office successfully

  challenging unconstitutional practices of civil forfeiture and leading to a consent decree ensuring full due process rights in civil forfeiture proceedings and an award of damages to the plaintiff class; and

  g. *Remick v. City of Philadelphia*, No. 20-1959 (E.D. Pa.), a class action initiated to address the Philadelphia Department of Prisons' failure to protect incarcerated people from COVID 19 and which resulted in a settlement agreement addressing a broad scope of issues related to safe and humane conditions of confinement.

  10. Over the past 25 years, I have challenged systemic misconduct in the criminal justice system that has led to the wrongful conviction and imprisonment of innocent persons. In 2008, David Richman, Esq., then a partner with the Pepper Hamilton law firm, and I founded the Pennsylvania Innocence Project.

  11. In connection with this work, I have represented persons in post-conviction and habeas proceedings challenging their convictions and in seeking compensation for wrongful convictions. In the early 2000s, I represented Bruce Godschalk, one of the first persons in Pennsylvania to be exonerated by post-conviction DNA testing. We were successful in securing an Order mandating post-conviction testing. *Godschalk v. Montgomery Cty. Dist. Atty's Ofc.*, 177 F. Supp. 2d 366 (E.D. Pa. 2001). We then secured a vacatur of the conviction and the dismissal of the charges and obtained a multi-million-dollar settlement of civil rights claims brought against detectives and the Montgomery County District Attorney's Office.

  12. Since that time, our law firm has been involved in multiple cases in district courts throughout the Third Circuit involving claims of wrongful convictions and prolonged periods of unlawful imprisonment, leading to repeated multi-million-dollar settlements. I personally have

served as lead counsel or co-lead counsel to the plaintiffs in the following cases: *Halsey v. Pfeiffer*, No. 09-1138 (D.N.J.) ($12.5 million settlement); *Wright v. City of Philadelphia*, No. 16-5020 (E.D. Pa.) ($9.85 million settlement); and *Siehl v. City of Johnstown*, No. 18-0077 (W.D. Pa.) ($8.2 million settlement).

13. In wrongful conviction litigation, the three most commonly litigated claims are those based on (a) fabrication of evidence, (b) suppression of exculpatory evidence, and (c) malicious prosecution. There is now precedent in the Third Circuit on each of these claims from cases in which I have been appellate counsel. *See Dennis v. City of Philadelphia*, 19 F.4th 279, 290-92 (3d Cir. 2021) (establishing availability of a Fourteenth Amendment deliberate deception claim); *Halsey v. Pfeiffer*, 750 F.3d 273, 295-96 (3d Cir. 2014) (establishing availability of a Fourteenth Amendment fabrication of evidence claim); *Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998) (establishing availability of malicious prosecution claim under the Fourth Amendment).

14. Paul Messing has been my law partner since 1993. I knew Mr. Messing from his work at the Defender Association of Philadelphia, where he developed a reputation as one of the most sophisticated trial lawyers working in the Philadelphia criminal justice system. I invited him to join my firm. Over the past 30 years as partners in the firm we have worked together on civil rights and criminal defense cases, and in recent years have focused on post-conviction litigation on behalf of persons wrongfully convicted and on related civil rights actions for damages suffered due to police and prosecutorial misconduct. Mr. Messing has an outstanding reputation for excellent criminal defense and civil rights litigation.

15. Jonathan H. Feinberg has been my law partner since 2006. I knew Mr. Feinberg before he entered law school from his work as a paralegal with the ACLU of Pennsylvania. He

later was my student at the University of Pennsylvania Law School. I invited him to join my firm as an entry-level associate in 2002 following his graduation and one-year judicial clerkship. I have observed Mr. Feinberg's work for more than 21 years, over which time he has become a leading civil rights lawyer in Philadelphia and on a national basis. His legal work is of the highest quality, and he has universal respect from his peers and from opposing counsel.

16. In 2018, our firm was retained by James Dennis for purposes of a civil rights lawsuit against the Philadelphia Police detectives who had caused his wrongful conviction, following the Third Circuit's decision on his habeas corpus petition. *Dennis v. Sec'y, Pa. Dept. of Corr.*, 834 F.3d 263 (3d Cir. 2016). My partner, Paul Messing, and I recognized that a civil rights claim would have to address significant legal issues that are described in more detail in Mr. Messing's Declaration. I agreed to assist Mr. Messing with the litigation by providing strategic and legal consultation, which I did on a regular basis during the early stages of the litigation. After the defendants pursued an interlocutory appeal from the Court's denial of a motion to dismiss, Mr. Feinberg and I assisted Mr. Messing in the preparation of a brief on behalf of Mr. Dennis, and I presented oral argument in the Third Circuit. The Court ruled in favor of Mr. Dennis, and on remand, I continued to provide strategic and legal consultation to Mr. Messing at numerous stages, including briefing on a summary judgment, on trial motions in limine, and on issues that arose at trial.

17. In our firm's civil rights litigation, we traditionally do not bill our clients. We agree to front all costs of litigation and advise our clients that we will only be paid a fee in the form of a contingent recovery resulting from a settlement or a jury verdict. We also advise our clients that in the event the client is a prevailing party after trial we will seek attorneys' fees for

all hours spent on the case at a rate determined to be fair and reasonable in the Philadelphia legal market.

18. Consistent with these practices, I have maintained contemporaneous records of compensable hours I have spent working on this matter, which are documented on the attached timesheet. I have not billed for any time that could not reasonably be billed to a client who was paying a fee for services. I have billed a total of 91.4 hours. Based on my experience in civil rights litigation, I believe that the hours I have billed are fair and reasonable and were necessarily incurred to ensure the successful litigation of the case.

19. Over the years of my civil rights practice I have set my fee under Section 1988 based on the prevailing rates charged by lawyers in the Philadelphia legal community with comparable experience and expertise in their fields of practice. *See* Declaration of Marc J. Sonnenfeld. Based on that data and information, lawyers in the Philadelphia legal market with my level of experience, expertise, and standing bill at rates well in excess of $1,000 per hour, with some approaching $2,000 per hour.

20. In view of these rates, I request that I be compensated at a rate of $1,150 per hour. I believe that this rate is fair and reasonable in the circumstances of this case.

21. The lodestar amount of the fees I request (91.4 * $1,150 per hour) is $105,110.00.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 6th day of June, 2024, in Philadelphia, Pennsylvania.

/s/ David Rudovsky  
David Rudovsky

**Timesheet for David Rudovsky, Esq.**
*Dennis v. Jastrzembski et al.*, No. 18-cv-2689

| DATE | ACTIVITY | HOURS |
|---|---|---:|
| 6/1/18 | Review draft Complaint; habeas pleadings and rulings | 2.0 |
| 6/2/18 | Continue review of habeas pleadings and rulings | 1.6 |
| 8/27/18 | Review motion to dismiss; begin research on legal issues | 3.0 |
| 8/28/18 | Continue research on MTD issues | 1.8 |
| 9/3/18 | Review and edit P. Messing draft response to MTD | 1.0 |
| 9/4/18 | Additional edits to response to MTD | .5 |
| 5/16/19 | Review opinion on motion to dismiss | 0.5 |
| 6/12/19 | Edit P. Messing's draft mediation memo | 1.0 |
| 6/18/19 | Research issues related to interlocutory appeal | 2.0 |
| 6/19/19 | Continued research on issues related to interlocutory appeal | 1.3 |
| 7/19/19 | Consult with P. Messing on Third Circuit Order; research | 2.2 |
| 1/10/20 | Edit Third Circuit Mediation Memo | 0.5 |
| 8/20/20 | Review defendants' brief; begin legal research | 2.3 |
| 8/21/20 | Continued research on legal issues in defendants' brief | 2.0 |
| 9/4/20 | Meeting with co-counsel re: briefing strategy | .4 |
| 9/8/20 | Meeting with J. Feinberg, P. Messing re: brief | .5 |
| 9/11/20 | Edits to draft brief; emails with J. Feinberg | 3.5 |
| 9/18/20 | Review latest version of brief | 3.0 |
| 9/20/20 | Revise P. Messing draft brief; research Heck issues | 5.7 |
| 9/28/20 | Final edits on appellees' brief | 1.5 |

| DATE | ACTIVITY | HOURS |
|---|---|---:|
| 10/24/20 | Review defendants' reply brief | 0.8 |
| 1/4/21 | Prepare for oral argument: draft outline, additional legal research | 5.0 |
| 1/5/21 | Continued preparation for oral argument | 2.5 |
| 1/14/21 | Zoom meeting with P. Messing and J. Feinberg re oral argument | 1.4 |
| 1/18/21 | Meeting with P. Messing and J. Feinberg re: oral argument | 2.0 |
| 1/20/21 | Final preparation for argument; on zoom for argument | 4.5 |
| 10/18/21 | Emails re: post-argument submission | .2 |
| 11/2/21 | Draft letter response to Appellants' 28(j) letter | 2.0 |
| 11/3/21 | Edits to response to 28(j) letter | .5 |
| 11/23/21 | Review Third Circuit ruling and discuss with P. Messing and J. Feinberg | 1.5 |
| 3/24/22 | Research and edit response to motion to stay | 1.5 |
| 6/20/22 | Edit Motion to Lift Stay | .5 |
| 4/18/23 | Draft argument on Heck issue | 1.0 |
| 5/5/23 | Review summary judgment motion and edit P. Messing draft opposition | 3.0 |
| 5/6/23 | Continued edits and drafting of opposition to summary judgment motion | 2.5 |
| 5/7/23 | Continued edits and drafting of opposition to summary judgment motion | 1.0 |
| 5/19/23 | Review defendants' reply memorandum and edit P. Messing draft sur-reply | 1.8 |
| 2/14/24 | Review pretrial motions and discuss strategy with P. Messing | 3.0 |

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 2/15/24 | Continued review of pretrial motions; discussions with P. Messing | 1.5 |
| 4/9/24 | Discuss trial strategy issues with P. Messing | 1.2 |
| 4/11/24 | Continued discussions of trial strategy issues | 1.7 |
| 4/12/24 | Discuss additional trial strategy issues | 1.5 |
| 4/14/24 | Discuss additional trial strategy issues | 1.5 |
| 4/29/24 | Discuss attorneys' fee issues with co-counsel | .2 |
| 5/7/24 | Review defendants' motion to stay execution of judgment; emails with P. Messing, J. Feinberg | .5 |
| 5/12/24 | Compile materials for fee motion | .5 |
| 5/21/24 | Zoom with P. Messing and J. Feinberg re: post-trial issues | .5 |
| 5/22/24 | Review motion for prejudgment interest | .4 |
| 5/25/24 | Edits to declaration in support of fee motion | 1.0 |
| 5/25/24 | Edits to fee motion, memorandum | 1.5 |
| 5/28/24 | Edit response to post-trial motions; additional drafting | 3.5 |
| 5/29/24 | Additional editing and drafting of response to post-trial motions | 2.8 |
| 6/1/24 | Emails with co-counsel re: judgment execution issues | .2 |
| 6/2/24 | Review and edit Sonnenfeld declaration | .5 |
| 6/2/24 | Additional edits to fee motion, memorandum | .5 |
| 6/2/24 | Additional edits to prejudgment interest reply | .4 |
| 6/6/24 | Final review of fee motion and materials | .5 |
| | **TOTAL** | **91.4** |

**91.4 hours X $1,150 per hour = $105,110.00**