IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES DENNIS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-2689 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                      **August 22, 2024**

On April 25, 2024, a civil jury returned a verdict in favor of Plaintiff James Dennis on his claims of deliberate deception and civil rights conspiracy against Defendant Detectives Frank Jastrzembski and Manuel Santiago. Following the jury's verdict, both Defendants filed a joint omnibus post-trial motion pursuant to Federal Rules of Civil Procedure 50 and 59. Defendants argue they are entitled to judgment as a matter of law under Rule 50 because Dennis' deliberate deception claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and there is insufficient evidence to support the claims. In the alternative, Defendants move for a new trial under Rule 59, claiming the jury failed to adhere to the Court's final instructions, and certain testimony was improperly permitted or precluded. Because Dennis' claims are not barred by *Heck* and the evidence presented at trial was sufficient to support the jury's verdict, Defendants are not entitled to judgment as a matter of law. And because the jury followed the Court's instructions and the contested testimony was either properly permitted or, if improperly excluded, did not result in a great miscarriage of justice, a new trial is not warranted. The motion will therefore be denied in full.

## BACKGROUND

In 1992, a jury convicted Dennis of first-degree murder and other offenses in connection with the shooting death of Chedell Williams, and sentenced him to death. Dennis filed a successful

habeas petition in this Court in 2011, alleging police misconduct and *Brady* violations. *See Dennis v. Wetzel*, 966 F. Supp. 2d 489, 490-91 (E.D. Pa. 2013). The Third Circuit affirmed the grant of the writ and vacated Dennis' 1992 conviction. *See Dennis v. Sec'y of Pa. Dep't of Corr.*, 834 F.3d 263, 269 (3d Cir. 2016) (en banc). The Commonwealth then offered Dennis a nolo contendere plea to the reduced charge of third-degree murder, with the sentence of time served. After spending over 25 years on death row for his 1992 conviction, in 2016, Dennis entered a plea of nolo contendere and left prison.

On June 27, 2018, Dennis filed this 42 U.S.C. § 1983 action against the City of Philadelphia and the Detective Defendants, alleging violations of his Fourteenth Amendment right to due process of law and a fair trial in connection with his 1992 conviction. Trial began on April 15, 2024. After the close of Dennis' case, the Detective Defendants filed a joint motion for judgment as a matter of law under Rule 50(a) asserting Dennis produced insufficient evidence to support his claims. ECF No. 227. This Court did not grant the motion,[1] but submitted the case to the jury on April 23, 2024.[2] On April 25, 2024, the jury found in favor of Dennis on his claims of deliberate deception and civil rights conspiracy against the Defendant Detectives. Following the verdict, the Detective Defendants filed the instant omnibus post-trial motion under Rules 50 and 59,

---

[1] Defendants' motion for judgment as a matter of law under Rule 50(a) largely makes the same arguments addressed in this Memorandum and is thus denied for the same reasons. The Rule 50(a) motion additionally argues Dennis' civil rights conspiracy claim fails due to the absence of any underlying constitutional violation, as his deliberate deception claims are "*Heck*-barred, or otherwise fail as a matter of law." Defs.' Rule 50(a) Mem. Law 25, ECF No. 227. As will be discussed, Dennis' claims are not barred by *Heck* and the evidence presented at trial was sufficient to support the jury's verdict. His deliberate deception claims therefore satisfy the constitutional injury requirement of his civil rights conspiracy claim.

[2] The City of Philadelphia made an uncontested oral motion for judgment as a matter of law on April 23, 2024, which the Court granted. *See* ECF No. 242.

challenging the sufficiency of the evidence, the jury's disregard of the Court's instructions, and the admission and preclusion of certain testimony.[3] ECF No. 268.

## STANDARD OF REVIEW

A trial court may grant a renewed motion for judgment as a matter of law under Rule 50(b) "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001) (citation and internal quotation marks omitted). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citations omitted). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted). Instead, courts must resolve all conflicts in the evidence in favor of the verdict winner. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991).

Under Federal Rule of Civil Procedure 59(a), the "court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Although the "decision to grant or deny a new trial is confided almost entirely to the discretion of

---

[3] Defendants requested oral argument pursuant to Local Rule of Civil Procedure 7.1(f). Because many of Defendants' arguments overlap with previous arguments made at the motion to dismiss and summary judgment stages, the Court disposes of this motion on the papers. *See* Loc. R. Civ. P. 7.1(f) ("Any interested party may request oral argument on a motion. The court may dispose of a motion without oral argument.").

the district court," *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) (citation omitted), a court may "not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury,'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960) (en banc)). The Third Circuit has thus instructed that a new trial should only be granted when "the great weight of the evidence cuts against the verdict" and "a miscarriage of justice would result if the verdict were to stand." *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) (citations and internal quotation marks omitted).

## DISCUSSION

Defendants seek judgment as a matter of law under Rule 50 or, alternatively, a new trial under Rule 59. Beginning with the request for relief under Rule 50, Defendants argue they are entitled to judgment notwithstanding the verdict because (1) Dennis' Fourteenth Amendment deliberate deception claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the record does not establish liability for deliberate deception; and (3) the record does not establish Dennis suffered any actual injury because of Defendants. The Court addresses each argument in turn.

The Supreme Court in *Heck* held that if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the action must be dismissed. 512 U.S. at 487. Thus, if prevailing in a § 1983 action requires "negat[ing] an element of the offense of which he has been convicted," the action is barred by *Heck*. *Id*. at 486 n.6. But if a district court determines a § 1983 action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*. at 487.

Defendants argue Dennis' deliberate deception claims are barred by *Heck* because success on those claims "necessarily negate[d] the causation element" and "required the jury to find facts inconsistent with those" of his 2016 third-degree murder conviction.[4] Defs.' Mem. Law 5-6, ECF No. 268. As to the alleged negated causation element, Defendants focus on the "material prejudice" prong of a claim of deliberate deception. They note that to satisfy this material prejudice requirement, a plaintiff must establish "the factfinder would have had a reasonable doubt respecting guilt," which is "by its very nature a collateral attack on the validity of a conviction." *Id*. at 10 (quoting *Strickland v. Washington*, 466 U.S. 668, 695 (1984)). Applying that logic here, Defendants argue Dennis' success on his deliberate deception claims means "a reasonable doubt exists that Mr. Dennis *caused* the unlawful death of Chedell Ray Williams," because the evidence supporting the claims suggests someone other than Dennis committed the crime and that he was not at the scene of the crime.[5] *Id*. at 12-14. Defendants thus conclude the jury verdict must have been based on a reasonable doubt regarding Dennis' involvement in and presence at the killing, which would necessarily invalidate his conviction for third-degree murder and contravene *Heck*. *Id*. at 14.

Defendants mischaracterize Dennis' deliberate deception claims as an attack on his third-degree murder conviction. As this Court has previously explained, however, the claims are limited to Dennis' vacated 1992 conviction for first-degree murder. *See* Mem. 6-9, 10/30/2023. To

---

[4] Defendants also argued Dennis' claims are barred by *Heck* at the motion to dismiss and summary judgment stages.

[5] This evidence includes: "(1) the Cason Receipt; (2) the Howard Activity Sheet; (3) the Frazier Documents; and (4) the Ritchie Interview." Defs.' Mem. Law at 10-11. The Court previously summarized this evidence in denying Defendants' motion for summary judgment. *See* Mem. 3, 10/30/2023, ECF No. 93.

succeed, Dennis was required to prove "by a preponderance of the evidence that he would not have been convicted of *first*-degree murder in the absence of the deliberate deception." *Id*. at 7 (emphasis added) (quoting *Dennis v. City of Phila.*, 379 F. Supp. 3d 420, 432 (E.D. Pa. 2019)). Importantly, deliberate deception, like a *Brady* violation,[6] "thwart[s] the basic purposes of due process and work[s] to deny an individual a fair trial." *Id*. at 6 (quoting *Dennis*, 379 F. Supp. 3d at 430). And as explained in *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014), a case Defendants do not discuss, such claims only "necessarily imply the invalidity of the challenged conviction in the trial . . . *in which the Brady [or deliberate deception] violation occurred*." 750 F.3d at 132 (citation omitted). A deliberate deception claim is inevitably circumscribed in this manner because the remedy for the violation is "*vacatur* of the judgment of conviction and a new trial in which the defendant now has the *Brady* [or deliberate deception] material available to her." *Id*. at 133.

Such is the case here. Dennis' deliberate deception claims could not have implied the invalidity of his third-degree murder conviction, because that subsequent conviction was untainted by any deliberate deception. Defendants' arguments to the contrary incorrectly conflate Dennis' deliberate deception claims concerning his first-degree murder conviction with his separate third-degree murder conviction. Because Dennis' first-degree murder conviction was vacated, he had "the right to argue to the jury that, [without the deliberate deception], he would have been acquitted based on reasonable doubt or convicted on a lesser charge." *Id*. at 135. Therefore, his deliberate deception claims did not necessarily negate the causation element of his third-degree murder conviction.

---

[6] Defendants agree a deliberate deception claim "mirrors the substantive standards" of a *Brady* claim, including the material prejudice requirement they focus on. Defs.' Mem. Law 9.

Defendants also assert *Heck* bars Dennis' deliberate deception claims because those claims "required the jury to find facts that are inherently inconsistent with" his third-degree murder conviction. Defs.' Mem. Law 15. In support, the Defendants discuss how each of the four pieces of evidence supporting the deliberate deception claims undermines both his first- and third-degree murder convictions.[7] *See id.* at 15-18. Defendants unsuccessfully made a similar argument in their motion for summary judgment, contending Dennis' second conviction "results from satisfaction of the same exact material elements *and* proofs as the vacated conviction; that is, the same core evidence that supported the vacated conviction also supports the second clean conviction." Mem. 9, 10/30/2023 (citations and internal quotation marks omitted). The argument fares no better here for the same reason previously stated: Dennis' third-degree murder conviction "was not based on any of the evidence" challenged in his deliberate deception claims. *Id.* And to the extent Defendants argue the deliberate deception claims undermine the factual basis of his second conviction, this again ignores that Dennis need only show by a preponderance of the evidence that, absent the deliberate deception, he would not have been convicted of first-degree murder. *See id.* at 9 n.3. Defendants have not shown the jury found facts "inherently inconsistent" with Dennis' third-degree murder conviction, and *Heck* is therefore inapplicable.

Defendants next argue there is insufficient record evidence to support a finding of liability for deliberate deception. Defs.' Mem. Law 18. Though presented separately, this is ultimately another *Heck* argument. Indeed, Defendants claim "[n]one of the evidence relied on by Mr. Dennis establishes liability for deliberate deception without also undermining the causation and malice

---

[7] For example, Defendants claim "[t]he Cason Receipt does not undermine the vacated conviction for first-degree murder without also undermining Mr. Dennis' outstanding conviction for the lesser included offense of murder in the third-degree." Defs.' Mem. Law 16. Defendants similarly conclude the Howard Activity Sheet, the Frazier Documents, and the Ritchie Interview all undermine confidence in both the first- and third-degree murder convictions. *Id.* at 16-18.

elements of his outstanding murder conviction." *Id*. at 20. As discussed, Defendants' view incorrectly conflates his vacated and valid convictions. The factual basis for his nolo contendere plea to third-degree murder did not include any of the evidence that was the product of deliberate deception. *See* Mem. 9, 10/30/2023. And as the Court concluded in denying summary judgment, "Defendants go too far in arguing Dennis' success would necessarily negate any element of his 2016 conviction." *Id*. at 7. Dennis showing "by a preponderance of the evidence that he would not have been convicted of first-degree murder in the absence of the deliberate deception" does not mean any elements of his third-degree murder conviction are necessarily negated. *Id*. Defendants have not shown Dennis' deliberate deception claims imply the invalidity of his third-degree murder conviction. Accordingly, *Heck* is not a bar.

Defendants' final argument under Rule 50 asserts the record does not establish Dennis suffered any actual injury because of their conduct. Defs.' Mem. Law 22, 24. First, Defendants claim all of Dennis' alleged injuries resulted from incarceration generally, rather than because of his confinement on death row. *Id*. at 24. To the contrary, Dennis' psychological expert, Dr. Bethany Brand, testified about injuries attributable to his death row confinement. Specifically, Dr. Brand testified Dennis suffers from post-traumatic stress disorder because of (1) the two death warrants that were issued during his incarceration, and (2) his solitary confinement on death row. Brand Dep. 53:4-15, 63:3-15, ECF No. 268-1. Dr. Brand clarified more than once that these injuries were specific to his incarceration on death row. *Id*. at 61:6-63:15; *see also id*. at 66:9-67:23 (explaining the differences between solitary confinement and serving a sentence in the general prison population). In arguing Dennis has only shown evidence of injury due to incarceration generally, Defendants tellingly ignore these aspects of Dr. Brand's testimony. The Court thus

concludes there is record evidence of actual injury attributable to Dennis' confinement on death row.

Defendants further argue that even assuming sufficient evidence of actual injury, they were not the cause of any damages. Defs.' Mem. Law 24. Specifically, Defendants contend any actual injury resulting from the decision to charge Dennis with first-degree rather than third-degree murder was "reserved exclusively" to the Philadelphia District Attorney's Office and assigned prosecutors. *Id.* at 26. According to Defendants, they could not have caused Dennis' claimed damages because they "lacked input, discretion, and authority" in determining the degree of Dennis' murder charge. *Id.* at 27. This Court previously rejected the same argument[8] when Defendants raised it in a motion in limine, explaining:

> In some circumstances, an intervening act by a third party may sever the chain of causation between a defendant's actions and the plaintiff's injuries, but "the decision of an independent intermediary 'will only constitute an intervening cause if the decision is genuinely free from deception or coercion.'" Put differently, "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." Here, Jastrzembski and Santiago are alleged to have engaged in deliberate deception . . . that made the Commonwealth's case against Dennis appear far stronger than it actually was. Under state law, the ultimate decision of whether to charge Dennis and what charges to bring rested with the prosecutor. But insofar as these decisions were informed by Defendants' misconduct, Defendants "cannot hide behind the officials whom they have defrauded."

Order 2, 04/09/2024 (internal citations omitted), ECF No. 203. As the Court previously concluded, "this is not a case in which [Dennis'] theory of causation is 'so remote that, as a matter of law, [Defendants] cannot be held liable for the harm which subsequently occurred.'" *Id.* (quoting *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 851 (3d Cir. 1995)). The Court thus

---

[8] Defendants' motions for judgment as a matter of law do not offer any new arguments explaining why they are not liable.

concludes the record sufficiently shows Defendants can be held liable for Dennis' harm. Defendants are therefore not entitled to relief under Rule 50.

In the alternative, Defendants argue they are entitled to a new trial pursuant to Federal Rule of Civil Procedure 59 because (1) the jury failed to adhere to the Court's final instructions; (2) the admission of Dennis' testimony regarding his innocence was an abuse of discretion; and (3) Defendants were improperly and prejudicially precluded from correcting Dennis' false testimony. Defs.' Mem. Law 29.

Defendants first argue a new trial is warranted because the jury failed to adhere to the Court's final instructions. At the end of trial, the Court instructed the jury on Dennis' 2016 convictions as required by *Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997).[9] *See* Mem. 7-9, 04/08/2024, ECF No. 189. Defendants claim the jury did not follow this *Nelson* charge because it imposed liability for deliberate deception. Defs.' Mem. Law 30. Specifically, Defendants claim because the jury concluded the four pieces of evidence supporting the deliberate deception claims undermined his vacated conviction, the jury incorrectly "base[d] its verdict on findings not consistent" with his valid 2016 conviction. *Id*. at 30-31. Again, this blurs the line between Dennis' first- and third-degree murder convictions. Whether the jury found the evidence undermined the

---

[9] Specifically, the Court instructed as follows:

> Members of the jury, in -- there are several conclusions of law which you must accept as true for purposes of this lawsuit. . . . Mr. Dennis was convicted of five crimes in connection with the death of Chedell Ray Williams. You must accept that Mr. Dennis is convicted of murder of the third degree, robbery, carrying a firearm without a license, conspiracy to commit robbery, and possession of an instrument of a crime with intent to deploy criminally. These [5] convictions have not been overturned and Mr. Dennis remains convicted of these crimes. To the extent your resolution of factual dispute will be inconsistent with any of these five convictions, you must resolve that dispute in favor of the conviction.

Tr. 98:25-100:1, ECF No. 259. The Court then instructed the jury on the criminal law of carrying a firearm without a license, third-degree murder, and first-degree murder. *Id*. at 100:2-102:7.

*vacated* conviction is a distinct question from whether it undermined the *valid* conviction. And finding the evidence undermined the vacated conviction is entirely consistent with Dennis' third-degree murder conviction, which was based only on evidence untainted by deliberate deception. Defendants have not shown the jury failed to adhere to the final instructions.

Defendants also argue admission of Dennis' innocence testimony was an abuse of discretion because it was irrelevant. Defs.' Mem. Law 31. Defendants similarly moved to bar Dennis from asserting his innocence in a motion in limine. *See* ECF No. 116. This Court concluded Dennis would be permitted to assert his innocence because his situation was sufficiently analogous to that of the plaintiff in *Sharif v. Picone*, 740 F.3d 263 (3d Cir. 2014), in which the Third Circuit held "[a] nolo plea reflects a prosecutorial choice to permit a defendant to persist in not admitting the crime for the sake of obtaining the conviction." 740 F.3d at 271. As this Court explained:

> In the Court's view, this analysis from *Sharif* is directly applicable to Dennis' situation and allows him to assert his innocence. Like the plaintiff in *Sharif*, Dennis entered a *nolo* plea and then brought a civil action in which he took what Defendants characterize as a "contrary position" to the *nolo* plea by denying any wrongdoing in the civil action. But as the court in *Sharif* explained, describing it as a "contrary position" is inaccurate—Dennis' assertion of innocence here is completely consistent with the very definition of his *nolo* plea, which allows him to "persist in not admitting the crime."

Mem. 6-7, 04/08/2024 (quoting *Sharif*, 740 F.3d at 271). The Court also noted Defendants' arguments in opposition "simply fail[ed] to reckon with the definition of a *nolo* plea and the *Sharif* analysis." *Id*. at 7.

Defendants again fail to acknowledge the relevant *Sharif* analysis, and instead contend any assertion of innocence was irrelevant.[10] *See* Defs.' Mem. Law 31-33. The Court disagrees.

---

[10] In support of their relevance argument, Defendants selectively quote a passage from oral arguments on the motions in limine. Defs.' Mem. Law 32. The exchange Defendants cite was part of the back and forth at argument, before the Court decided the motion in limine and concluded

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. To prevail on his § 1983 claims, Dennis was required to show by a reasonable likelihood and preponderance of the evidence that, absent the fabricated evidence and deliberate deception, he would not have been convicted of first-degree murder. *See* Mem. 7, 10/30/2023. Dennis asserting his innocence of the first-degree murder is relevant to those questions.[11] This conclusion is confirmed by *Sharif*, in which the Third Circuit similarly allowed a plaintiff who entered a nolo contendere plea to "persist in not admitting the crime."[12] *Sharif*, 740 F.3d at 271. Dennis' innocence testimony was relevant and admissible.

Finally, Defendants claim they were improperly and prejudicially precluded from correcting Dennis' false testimony about his criminal record. Defs.' Mem. Law 34-35. During Dennis' direct examination, he testified that when he was interviewed regarding Williams' death in November 1991, he "had never really been arrested before." *Id*. at 34. At sidebar, Defendants informed the Court they planned to impeach Dennis' testimony with his previous 1990 arrest and conviction for drug possession. *Id*. This Court sustained Dennis' objection to the planned impeachment. *Id*. Defendants argue precluding the drug possession impeachment resulted in the

---

Dennis could assert his innocence. Defendants' quotation also omits a subsequent exchange on the relevance of Dennis' innocence testimony. *See* Tr. 86:1-3, 87:17-88:2, ECF No. 262.

[11] The Court notes Dennis' assertion of innocence was still subject to the jury's credibility determination, and thus did not necessarily make it more probable he would not have been convicted of first-degree murder, as Defendants imply.

[12] Indeed, Defendants' relevance argument as applied to *Sharif* would mean that plaintiff could not testify to his innocence, which is the opposite of what the Third Circuit concluded. *See Sharif*, 740 F.3d at 271.

"misleading impression that Mr. Dennis was in-fact 'a choir boy'" and thus warrants a new trial. *Id*. at 34-35.

The Court disagrees. Even if the Court erred in its ruling, Dennis' testimony about his criminal record does not show "the great weight of the evidence cuts against the verdict" and "a miscarriage of justice would result if the verdict were to stand." *Leonard*, 834 F.3d at 386 (citations and internal quotation marks omitted). Indeed, during the same sidebar in which it precluded the drug possession impeachment, the Court overruled Dennis' objection and permitted Defendants to question him about a separate robbery conviction. *See* Tr. 166-67, ECF No. 253. The Court also gave the following instruction to the jury on Dennis' separate conviction:

> You heard evidence that Mr. Dennis was previously convicted of a crime punishable by more than one year in jail. You may consider this evidence along with other current evidence in deciding whether or not to -- whether or not to accept his testimony and how much to give his testimony, members of the jury.

Tr. 94:7-13, ECF No. 259. And the Court instructed the jury on Dennis' convictions that resulted from his nolo contendere plea. *See id*. at 99:16-23. In other words, the jury was aware Dennis had several other convictions. Accordingly, precluding the drug possession impeachment did not result in "a miscarriage of justice," and a new trial is unwarranted.

Defendants have not established a basis for relief under either Rule 50 or Rule 59. Their motion for post-verdict relief will therefore be denied in full.

An appropriate Order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.