IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES DENNIS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-2689 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                    **August 30, 2024**

On April 25, 2024, a jury found in favor of Plaintiff James Dennis on his claims of deliberate deception and civil rights conspiracy against Defendant Detectives Frank Jastrzembski and Manuel Santiago and awarded Dennis a total of $16 million in compensatory and punitive damages. Dennis now moves to amend the judgment to include prejudgment and postjudgment interest under Federal Rule of Civil Procedure 59(e). Because the jury's award does not include an identifiable component of past economic damages, Dennis' motion for prejudgment interest will be denied. And because postjudgment interest cannot be calculated until the Court quantifies the entire award, the Court will defer awarding postjudgment interest pursuant to 28 U.S.C. § 1961(a) until it has separately adjudicated Dennis' motion for attorneys' fees and costs.

**BACKGROUND**

On June 27, 2018, Dennis filed this 42 U.S.C. § 1983 action against the City of Philadelphia and the Detective Defendants seeking damages for violations of his Fourteenth Amendment right to due process of law and a fair trial in connection with his 1992 conviction. The case went to trial in April 2024. On April 25, 2024, the jury found in favor of Dennis on his claims of deliberate deception and civil rights conspiracy against the Defendant Detectives.[1] The jury awarded Dennis

---

[1] The City of Philadelphia made an uncontested oral motion for judgment as a matter of law on April 23, 2024, which the Court granted. *See* ECF No. 242.

1

lump sums of $10 million in compensatory damages and $6 million in punitive damages. Verdict Form 2-3, ECF No. 237. The jury was not asked to answer any special interrogatories regarding its award of compensatory damages. *See id*. Following the verdict, Dennis moved to amend the judgment to include prejudgment and postjudgment interest under Federal Rule of Civil Procedure 59(e). ECF No. 267. The motion is now ripe for review.

**DISCUSSION**

Dennis seeks a prejudgment interest award and a court order "directing [Defendants] to pay postjudgment interest as calculated under § 1961(a) on the day that payment is made." Pl.'s Mem. Law 2, 6, ECF No. 267. Defendants argue his request for prejudgment interest should be denied because "[t]he trial record lacks *any* evidence of past economic injuries—the only type of compensatory damages for which prejudgment interest could be available." Defs.' Opp'n 6, ECF No. 270. For postjudgment interest, the parties agree that "the exact figure of postjudgment interest cannot be determined" at this time. Pl.'s Mem. Law 6; Defs.' Opp'n 8. The Court considers each request in turn.

Prejudgment interest is awarded to make the plaintiff whole. *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 335 (1988) (citations omitted). While compensatory damages may cover noneconomic as well as economic harm, prejudgment interest compensates a plaintiff for economic harm: "the loss of the use of the money owed to him." *Lett v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Loc. 1594*, Civ. No. 19-3170, 2023 WL 2163828, at *2 (E.D. Pa. Feb. 22, 2023) (citation omitted). In § 1983 actions, an award of prejudgment interest is governed by federal law and is generally discretionary. *Nance v. City of Newark*, 501 F. App'x 123, 129 (3d Cir. 2012); *Savarese v. Agriss*, 883 F.2d 1194, 1207 (3d Cir. 1989) (citing *Poleto v. Consol. Rail*

*Corp.*, 826 F.2d 1270, 1279 n.16 (3d Cir. 1987)). The Third Circuit has emphasized prejudgment interest cannot be awarded for noneconomic harm or *future* economic harm:

> Not all portions of a verdict are economic in character, and only the sum that represents past economic loss is properly adjusted to present value through an interest calculation. Non-economic awards, such as pain and suffering on punitive damages, do not compensate for market-induced harms, so they do not require the adjustment for the time the successful plaintiff's money was out of the market which prejudgment interest provides. . . . Future economic harms must similarly be excluded from the adjustment of prejudgment interest, for interest adjustment would be antithetical to adjusting such a future stream of money to its present value.

*Poleto*, 826 F.2d at 1278 n.14 (internal citations omitted); *see also Robinson v. Fetterman*, 387 F. Supp. 2d 483, 485 (E.D. Pa. 2005) (concluding prejudgment interest can be awarded in § 1983 actions for economic harm but not for "that portion of the verdict . . . which compensates for pain and suffering or other non-economic loss"). Prejudgment interest awards are therefore only appropriate for past economic harm. *See id*.

Issues may arise when calculating prejudgment interest based on a general verdict awarding a lump sum in damages. For one, such a general verdict "might be presumed to have included prejudgment interest in its calculation of damages." *Poleto*, 826 F.2d at 1277. And while prejudgment interest must be cabined to past economic harm, a general verdict may not delineate between past and future harm or between economic and noneconomic harm. *See id*. The Third Circuit has thus contrasted general verdicts with verdicts that allow for the "practical application of prejudgment interest" through use of special jury interrogatories to "segregate[] past economic damages from non-economic and future economic damages." *Id*. The failure to use special interrogatories, however, does not necessarily bar a prejudgment interest award. *See Nance*, 501 F. App'x at 130 n.8 ("We have never held that requesting such interrogatories is necessary to preserve a claim for prejudgment interest, however, and we decline to do so now."). Prejudgment interest can still be determined from a general verdict that includes "some identifiable component

3

of past economic damages on which prejudgment interest should be awarded." *Id*. at 131. This determination requires a careful review of the record, including the jury instructions, verdict form, and trial evidence. *See id*.

In this case, the jury awarded Dennis lump sums of $10 million in compensatory damages and $6 million in punitive damages. Verdict Form 2-3. No special interrogatories were used for the compensatory damages section. *See id*. The parties correctly agree any prejudgment interest award must be limited to past economic damages within the awarded compensatory damages.[2] Pl.'s Reply 2-3, ECF No. 272; Defs.' Opp'n 2, 4 n.2. They disagree, however, as to whether the award includes an identifiable component of past economic damages. Defendants argue it does not. Defs.' Opp'n 6. Dennis counters that "[a] fair reading of the record shows that a reasonable jury that awarded $10 million in compensatory damages did so based on an assessment of economic losses that amounted to 20-25% of the general award of compensatory damages."[3] Pl.'s Reply 4.

To determine whether prejudgment interest can be determined from the general verdict, the Court begins by reviewing the jury instructions and verdict form. These materials do not suggest the resulting compensatory damages award was solely limited to past economic damages. The Court instructed on damages as follows:

> Mr. Dennis claims the following items of [compensatory] damages: Physical harm to Mr. Dennis *during and after* the events at issue including ill health, physical pain, disability, disfigurement, discomfort, and any such physical harm that Mr. Dennis is reasonably certain to experience *in the future*. . . .

---

[2] "[P]rejudgment interest is not available on punitive damages awards." *Nance*, 501 F. App'x at 129.

[3] Dennis initially requested a prejudgment interest award based on the entire $10 million compensatory damages award—totaling $4,591,233.36—before suggesting this percentage range. *See* Pl.'s Mem. Law 5.

4

> Emotion[al] and mental harm [to] Mr. Dennis *during and after* the events at issue including fear, humiliation, and . . . any such emotional or mental harm that Mr. Dennis reasonably be certain to experience *in the future*.
>
> The reasonable value of the medical[,] psychological[,] hospital[,] nursing[,] and similar [care] and supplies that Mr. Dennis *recently needed* or needs and *actually obtain[ed]* [or] needs to obtain and the present value of such care and supplies that Mr. Dennis is reasonably certain to need *in the future*.
>
> The wages, salary, profits, reasonable value of the work time that Mr. Dennis *has lost* because of his inability or diminished ability to work beginning from his time of release from incarceration to present and the present value of wages, salaries, profits, reasonable value of working time that Mr. Dennis is reasonably certain to lose *in the future* because of his inability or diminishability of work.

Tr. 109:8-110:7 (emphasis added), ECF No. 259.[4] As noted by the added emphasis, the jury was instructed to consider both past and future harm. *See id*. The jury was similarly instructed to consider both economic harm (medical expenses as well as wages, salary, profits, and the reasonable value of the lost work time) and noneconomic harm (physical, emotional, and mental harm). *See id*. The verdict form does not suggest otherwise, as it only asked the jury to "state the total amount of [compensatory] damages [Dennis] has proven by a preponderance of the evidence *in accordance with the Court's instructions regarding compensatory damages*." Verdict Form 2 (emphasis added). The jury instructions and verdict form thus collectively provide a reasonable basis for inferring that the compensatory damages awarded included future and/or noneconomic damages. At the very least, they do not alone reveal an "identifiable component of past economic damages" within the lump sum of $10 million in compensatory damages. *Nance*, 501 F. App'x at 131.

---

[4] Jurors received a copy of these instructions when deliberations began. *See* Tr. 84:13-15, ECF No. 259 ("I will give you a copy of the instructions so you will have them available while you're deliberating.").

The Court must also review the trial evidence to determine whether any past economic damages can be identified. Dennis argues prejudgment interest can be awarded based on the trial testimony of "witnesses who recounted how the [D]efendants' conduct caused [Dennis] to be unable to work following his release from prison." Pl.'s Reply 3. Specifically, Dennis points to (1) his own direct examination testimony explaining he "can't work" because he "suffer[s] from PTSD, anxiety, panic, and depression[,] . . . ha[s] panic and anxiety attacks, and . . . [is] always worried about someone trying to do [him] bodily harm from what the police did to [him]"; (2) his direct examination testimony explaining he has had no luck "reestablishing a music career"; and (3) the testimony of his psychological expert, Dr. Bethany Brand, on her findings concerning Dennis' inability to work for his partner's business. *Id*. at 3-4. Defendants claim these damages are "irrecoverable as a matter of law" because they are attributable to his lawful conviction. Defs.' Sur-Reply 2, ECF No. 275.

As Defendants note, this Court ruled prior to trial that Dennis could not recover damages for any portion of his imprisonment attributable to his valid 2016 conviction. Order 2-3, 04/09/2024, ECF No. 203. The Court thus barred Dennis from seeking damages for "the reputational harm and loss of career opportunities and earnings caused by his prolonged incarceration." *Id*. at 1. But Dennis was allowed to seek damages for (1) "the harms caused by standing trial in a death penalty case;" (2) "the impact of serving a sentence on death row (rather than in the general population);" and (3) "the psychological consequences he suffered from the years on death row and the threat of two death warrants issued during his incarceration." *Id*. In other words, Dennis' damages were limited to injuries attributable to his death row confinement. *See id*.; *see also* Mem. 8-9, ECF No. 297 (denying Defendants' renewed motion for judgment as

6

a matter of law in part because there was "record evidence of actual injury attributable to Dennis' confinement on death row").

Dennis' reply summarily concludes "[t]he Court instructed the jury that it could award Mr. Dennis damages for" his inability to work following his release from prison because the Court instructed the jury on wages, salary, profits, and reasonable value of the lost work time. Pl.'s Reply 4. But Dennis omits the rest of the Court's instruction, which stated:

> Your consideration of these categories of compensatory damages is entitled to -- is limited to those injur[ies] specifically caused by Mr. Dennis' presence on death row.
>
> You may not award Mr. Dennis damages for any injuries resulting from his valid term of incarceration from November 23rd, 1991 to December 22nd, 2016.
>
> In other words, if the physical harm or emotional mental harm or the incursion of medical expenses are attributable to incarceration generally or to Mr. Dennis' presen[ce] in prison, then Mr. Dennis may not recover those damages.
>
> Any award of compensatory damages conferred by you must be limited to the physical harm, emotional mental harm, or the incursion of medical expenses specifically related to Mr. Dennis' presence on death row and proven by a preponderance of the evidence.

Tr. 110:8-24, ECF No. 259. In sum, while the Court instructed the jury on wages, salary, profits, and reasonable value of the lost work time, the jury was also instructed that any such damages could not be awarded for injuries resulting from his imprisonment attributable to his valid 2016 conviction. This necessarily includes "the reputational harm and loss of career opportunities and earnings caused by his prolonged incarceration," because "[h]is sentence of time served resulting from his *nolo* plea was the same amount of imprisonment time as his vacated conviction, meaning his entire imprisonment time is attributable to his lawful 2016 convictions." Order 3, 04/09/2024. With these guiding principles in mind, the Court turns to the specific pieces of evidence cited by Dennis.

7

Dennis first cites to his own direct examination testimony explaining he is unable to work because he suffers from "PTSD, anxiety, panic, and depression," resulting in "panic and anxiety attacks," and is "always worried about someone trying to do [him] bodily harm from what the police did to [him]." Pl.'s Reply 3. Beginning with bodily harm, the Court concludes this injury is not specific to Dennis' death row confinement. During Dennis' direct examination, he explained that guards and prisoners wanted to cause him bodily harm because "you can't be in prison for anything that has to do with a woman or child." Tr. 108, ECF No. 253. He also agreed he would have still been beaten up if he had been in general population for third-degree murder of a 16-year-old girl. *Id*. at 168. Similarly, Dr. Brand testified "[i]t would seem likely" that Dennis would "still have been beat in prison" if he was incarcerated for another robbery and not on death row. Brand Dep. 121:8-17, ECF No. 268-1.[5] Dr. Michelle Joy, Defendants' psychological expert, agreed with Dr. Brand's assessment. Tr. 59:4-11, 60:5-8, ECF No. 249. Dennis points to no evidence suggesting the bodily harm he suffered was specific to his imprisonment on death row, and the Court's independent review similarly finds no such evidence. Because the bodily harm Dennis suffered is not limited to his death row confinement, Dennis' compensatory damages award could not have been based on that injury.

As to Dennis' PTSD, anxiety, panic, depression, and resulting panic and anxiety attacks, Dr. Brand testified Dennis suffers from these injuries because of (1) the two death warrants issued during his incarceration, and (2) his solitary confinement on death row. Brand Dep. 53:4-15, 63:3-15, 67:15-23. Dr. Brand repeatedly stated these injuries are specific to Dennis' incarceration on death row. *Id*. at 61:6-63:15; *see also id*. at 66:9-67:23 (explaining the differences between solitary

---

[5] Because Dennis did not attach Dr. Brand's testimony to the present motion, the Court cites to a separate exhibit containing her testimony.

confinement and serving a sentence in the general prison population). Dennis was therefore permitted to seek damages for PTSD, anxiety, panic, and depression and the resulting panic and anxiety attacks.

While Dennis could recover damages for his PTSD, anxiety, panic, and depression, any accompanying prejudgment interest must be limited to past economic harm. Dennis argues these injuries are economic because they resulted in his inability to work. Pl.'s Reply 3. He further claims the injuries are limited to the past because of "the advisory to the jury that it was permitted to include past economic losses in its damages award." *Id*. at 4. Dennis asserts "it would be entirely appropriate for the Court to exercise its discretion to award prejudgment interest as to a portion of the jury's compensatory damages award." *Id*. The Court disagrees. In viewing all the record evidence on Dennis' PTSD, anxiety, panic, and depression, the Court is unable to discern an identifiable component of past economic damages. Indeed, much of the evidence strongly suggested these injuries would persist for the foreseeable future. For example, when asked about Dennis' future prognosis, Dr. Brand stated:

> I'm not really comfortable saying this about any individual, but, given that he's had medications, individual therapy, couples therapy for years and he's actively participated in that and given how severe his symptoms still are and given what I've seen in the literature, there was a paper by Tchounwou, et al, time – I'm trying to think of the exact quote. Time does not heal all wounds is what they found in their sample, but, no matter how many years it was, the symptoms didn't tend to diminish in their sample, and that is certainly what I see with Mr. Dennis, so I think his prognosis is very guarded. . . .
>
> I think he's going to need ongoing psychotherapy and I would strongly recommend he see a trauma specialist. I don't know if he's going to be able to work in any capacity or a limited capacity. It's horrible that somebody who has gotten out -- you know, you want them to have a better life, but I don't see his trajectory -- his functioning improving dramatically, and I'm not sure it ever will, as much as he tries.

Brand Dep. 69:15-70:14. Dennis' counsel emphasized Dr. Brand's prognosis in closing arguments, noting Dr. Brand testified "this was very, very severe, as severe as it gets case of post-traumatic stress disorder of depression, anxiety, [and] other things." Tr. 47:1-3, ECF No. 259. Dennis correspondingly testified he felt no better during the 2024 trial than he did after his 2016 release in regards to "all the symptoms and issues" he described. Tr. 137, ECF No. 253.

In short, Dennis presented significant evidence showing his PTSD, anxiety, panic, and depression—and consequently, his inability to work—would continue into the future. It is thus reasonable to infer the awarded compensatory damages included damages for future harm resulting from his inability to work. While this is not fatal to prejudgment interest on its own, the Court's review of the record has not uncovered any evidence from which the Court can reasonably infer how much of the $10 million lump sum is for past economic damages due to his inability to work. Tellingly, Dennis also does not cite any evidence identifying the past economic damages component. Instead, he only notes the jury was instructed it could include past economic losses in its damages award, and that the Court has "broad discretionary authority."[6] Pl.'s Reply 2, 4. While the instructions certainly suggest the jury's award included past economic damages for Dennis' inability to work, they do not answer the relevant prejudgment interest inquiry: what *portion* of the jury's award covers those past economic damages. Without this information, it is impossible for the Court to determine prejudgment interest. And the Court's discretion does not allow it to

---

[6] Dennis also concludes "[a] fair reading of the record shows that a reasonable jury that awarded $10 million in compensatory damages did so based on an assessment of economic losses that amounted to 20-25% of the general award of compensatory damages." Pl.'s Reply 4. There is no explanation for how Dennis came to this percentage range. The Court also notes this bare assertion and percentage range do not cabin the economic damages to the past, as required for prejudgment interest.

blindly speculate as to the relevant portion. Accordingly, the Court will not award prejudgment interest based on Dennis' inability to work.

Dennis also argues prejudgment interest can be awarded due to his failure to reestablish his music career. But as discussed, Dennis was not permitted to seek damages for "reputational harm and loss of career opportunities and earnings caused by his prolonged incarceration." Order 1, 04/09/2024. Indeed, Dennis was reminded of the Court's ruling on this issue at sidebar, right before his music career testimony he now cites as supporting evidence:

> [MR. MESSING]: And your music career?
> MR. POMAGER: Objection.
> THE COURT: And oh, state your ground.
> MR. POMAGER: The Court's prior ruling. Relevance.
> THE COURT: Very well. You have my ruling on that issue. Where you going with this?
> MR. MESSING: I'm just asking [Dennis] if he still has a music career in his life as he did before.
> THE COURT: May I see [the parties] a[t] sidebar? . . .
> THE COURT: All right. I think I ruled that you cannot, as item of damages, claim that his music career was interfered because he spent time in jail.
> MR. MESSING: Right. The question is whether he has one now.
> THE COURT: All right. . . .
> MR. MESSING: Q. Since you were released from prison after the 2016 hearing, have you had any luck reestablishing a music career?
> [Dennis]: No.

Tr. 136-137, ECF No. 253; *see also* Tr. 205:19-23, ECF No. 256. Again, Dennis was only permitted to recover damages attributable to his death row confinement. But the cited testimony indicates he failed to reestablish his music career because of incarceration generally, "[s]ince [he was] released from *prison*." *Id*. at 137 (emphasis added). The Court otherwise finds no evidence suggesting Dennis' music career injury is specific to his death row confinement.[7] Because Dennis'

---

[7] Dr. Brand testified that Dennis suffered "vocal issues," as well as hearing loss due to being beaten up in prison. Brand Dep. 36:9-20, 73:3-9. But she did not testify these injuries were specific to Dennis' death row confinement. *See, e.g.*, *id*. at 121:8-17 (Dr. Brand stating "[i]t would seem likely" Dennis would "still have been beat in prison" if he was incarcerated for another robbery

11

failure to reestablish his music career is not limited to his death row confinement, Dennis' compensatory damages award could not have been based on that injury.

Finally, Dennis points to Dr. Brand's testimony concerning Dennis' inability to work for his partner, Corby Johnson, and her business. Pl.'s Reply 4. Dennis cites the following excerpt as evidence of past economic harm:

> [Corby Johnson] has a dog-grooming business and it is incredibly hard for people coming out of prison, no matter what, to get a job, but especially 25 and-a-half years. [Dennis] didn't develop any skills during that time. He didn't learn how to use computers or credit cards or cellphones and he's terrified about being out in public, around strangers, in crowds, so leaving the home is next-to-impossible. He tried to work for her, but then they had clients bringing in dogs all the time and he couldn't tolerate it, which was exasperating for both of them.

Brand Dep. 43:11-24. As with Dennis' failure to reestablish his music career, none of Dr. Brand's reasons for Dennis' inability to work with Johnson's business are specific to death row confinement.[8] Dr. Brand's testimony focuses on harms resulting from the length of Dennis' confinement, but as discussed, "[h]is sentence of time served resulting from his *nolo* plea was the same amount of imprisonment time as his vacated conviction, meaning his entire imprisonment time is attributable to his lawful 2016 convictions." Order 3, 04/09/2024. Because Dennis' inability

---

and not on death row). Rather, the only mention of a music-related harm specific to death row came from Dennis' expert witness, Marc Bookman, who testified musical instruments were available for prisoners in the general population, but not on death row. Tr. 153:16-18, ECF No. 248. But Bookman only testified to this difference generally, and there is no evidence suggesting a lack of accessibility to musical instruments applied to Dennis.

[8] This conclusion is based on the excerpt cited by Dennis, in which Dr. Brand emphasized "it is incredibly hard for people coming out of prison, no matter what, to get a job, but especially 25 and-a-half years." Brand Dep. 43:11-14. The Court recognizes that Dennis' fear of being in public and around strangers likely also stems from his PTSD, anxiety, panic, and depression—injuries specific to his incarceration on death row. But as discussed, there is no evidence from which the Court can reasonably infer how much of the $10 million lump sum is for past economic damages due to his inability to work with Johnson's business.

to work with Johnson's business is attributable to his valid conviction, his compensatory damages award could not have been based on that injury.

The Court's independent review of the trial evidence similarly does not reveal any identifiable component of past economic damages. For example, the jury was instructed it could award damages for the past economic damages of medical care and supplies Dennis needed or obtained. Tr. 109:21-25, ECF No. 259. But there is very little evidence discussing the medical care Dennis received with any specificity, and there is no evidence discussing the costs of that medical care.[9] Without any information on Dennis' actual medical care costs, the Court can only speculate as to how much of the $10 million covers the past economic damages for medical care. Ultimately, the Court's review of the record has revealed no "identifiable component of past economic damages on which prejudgment interest should be awarded."[10] *Nance*, 501 F. App'x at 131. It is not even clear whether the jury's verdict "included prejudgment interest in its calculation of damages." *Poleto*, 826 F.2d at 1277. Because it is impossible for the Court to determine the portion of compensatory damages that covers past economic harm with any specificity, Dennis' motion for prejudgment interest will be denied in full.

For postjudgment interest, the parties agree "the exact figure of postjudgment interest cannot be determined" at this time. Pl.'s Mem. Law 6; *see also* Defs.' Opp'n 8. Under 28 U.S.C. § 1961(a),

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury

---

[9] Dr. Brand confirmed Dennis saw other psychiatrists, and provided at least two names, but there is no discussion of the costs associated with those medical services. Brand Dep. 200:9-24.

[10] While not necessary for a prejudgment interest award, the Court notes Dennis did not introduce an economic expert or elicit any testimony with specific dollar amounts.

yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment.

The Third Circuit has held postjudgment interest awarded under § 1961(a) "runs from the date that the District Court actually quantifies the award." *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 527-28 (3d Cir. 2001); *see also Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 175 (3d Cir. 2010) (holding that under § 1961(a), "to count as a 'money judgment' a judgment must include . . . '*a definite and certain designation of the amount . . . owed*'" (quoting *Eaves*, 239 F.3d at 532-33)). While this Court has concluded no prejudgment interest will be awarded, there is still a pending motion for attorneys' fees and costs. *See* ECF No. 276. Postjudgment interest therefore cannot be calculated until this Court quantifies the entire award, including the definite amount of attorneys' fees and costs, if any. *See Eaves*, 239 F.3d at 534 ("[I]t necessarily follows that post-judgment interest begins to run on a judgment awarding attorney's fees where that judgment fixes the amount owed to the prevailing party."). Accordingly, the Court will award postjudgment interest pursuant to § 1961(a) once it disposes of Dennis' motion for attorneys' fees and costs, and can "actually quantif[y] the award." *Eaves*, 239 F.3d at 528.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.