**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **JAMES DENNIS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 18-cv-2689 |
| | : | |
| **DETECTIVE FRANK JASTRZEMBSKI** | : | |
| **and DETECTIVE MANUEL SANTIAGO,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES AND COSTS**

## I.    Introduction

Plaintiff James Dennis's motion for counsel fees and costs (ECF 276), supported by the expert declaration of 50-year Philadelphia practitioner, Marc J. Sonnenfeld, sought a total fee of $1,845,977.50 for *six years* of complicated, labor-intensive litigation leading to what Mr. Dennis's counsel believe to be the largest ever civil rights verdict in this Court: $16 million awarded to Mr. Dennis. The amount of the requested fee is substantially less than fees other courts around the country have awarded in comparable cases with smaller verdicts. *See Rosario v. City of New York*, No. 18-4023, 2023 WL 2523624, at *2 (S.D.N.Y. Mar. 15, 2023) ($3.8 million in fees, $5 million verdict); *Rodriguez v. City of Houston*, 06-2650, 2009 WL 10679670, at *3 (S.D. Tex. Dec. 22, 2009) ($3.5 million in fees, $5 million verdict). Still, the City of Philadelphia contends that Mr. Dennis's request is excessive and argues that the Court should cut the fee by more than 57%, for a total of $784,752.25. The City's reasoning in support of this

position, however, is meritless. Mr. Dennis's motion should be granted, and he should be awarded all fees requested in that motion.[1]

## II.    Argument

### A.    The Requested Fees are Proportional to Plaintiff's Level of Success.

The City's main contention in its opposition to the fee request is that Mr. Dennis only obtained partial success. On its face, that assertion is absurd given that the $16 million damages award is, to the knowledge of the undersigned counsel, the largest ever in a civil rights case in this Court. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (stating that "[w]here a plaintiff has obtained excellent results," counsel "should recover a fully compensatory fee"). Beyond that fact, the various bases offered by the City to support its assertion fail.

First, the City's repeated citations to *Pelzer v. City of Philadelphia*, 771 F. Supp. 2d 465 (E.D. Pa. 2011), do not support its effort to diminish Mr. Dennis's success. *Pelzer* is distinguishable in multiple respects. Most significantly, the plaintiff in that case sought to recover compensatory damages for her deceased son's pre-death pain and suffering and for his lost future earning potential which an economic expert valued at $200,000; the jury, however, awarded the plaintiff only $138,000. *Id.* at 472. Additionally, the plaintiff urged the jury to award punitive damages for the defendants' excessive use of force, but the jury declined to do so. *Id*. In this case, by contrast, the jury awarded Mr. Dennis $10 million in compensatory damages for harms that, as the individual defendants have described, involved almost exclusively emotional distress not subject to any economic valuation. ECF 270 at 5-6 ("[T]he predominate theory of recovery at

---

[1] The City repeats its request that the Court stay consideration of Mr. Dennis's fee motion pending resolution of all appeals. ECF 316 at 1. Mr. Dennis has already demonstrated that the stay requested by the individual defendants, Manuel Santiago and Frank Jastrzembski, is unwarranted, ECF 312, and understands the Court to have denied a similar request by the City. ECF 315. The City provides no new basis for a stay, and that request should be rejected again.

trial was for noneconomic emotional distress damages premised on the circumstances attendant to prosecution for first-degree murder and confinement in jail."). And, of course, the jury awarded Mr. Dennis $6 million in punitive damages. Mr. Dennis's level of success thus far outstrips the limited success obtained in *Pelzer*, and that decision provides no basis for an across-the-board reduction—let alone the unexplained 40% reduction adopted in *Pelzer*—to Mr. Dennis's fee request.

The fact that Mr. Dennis did not prevail on all claims does not justify a different result. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (holding that a prevailing party is one that "succeeded on any significant claim affording it some of the relief sought" even if plaintiff did not succeed on "central issue" in the case). Here, the deliberate concealment of evidence and conspiracy to violate civil rights (the claims on which Mr. Dennis prevailed) were core issues. Further, as to the individual liability claims, there is little question that evidence related to the defendant detectives' different types of misconduct throughout the investigation involved substantial overlap. Each claim against the individual defendants, deliberate deception and conspiracy (on which Mr. Dennis prevailed) and fabrication (on which Mr. Dennis did not prevail), concerned, at its core, the presentation of a false narrative about the crime. *See Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021) (describing deliberate deception claim as addressing "use of false testimony or other fabricated evidence" or "concealing evidence to create false testimony to secure a conviction"). The presence of a "common core of facts or…related legal theories" underlying the claims justifies full fees notwithstanding the lack of success on one of the claims. *Hensley*, 461 U.S. at 435.

As to the *Monell* claim against the City, counsel for Mr. Dennis was especially careful to scrupulously omit any request for compensation tied to independent time relating to the litigation

of that claim. The City asserts, without documentation, that the number of hours not claimed on this issue is unreasonably low, and asserts also without a factual basis that certain time entries must have also involved work related to municipal liability.[2] On the first point, Mr. Messing's expenditure of time on *Monell* related work was reduced in this case by his knowledge of relevant issues developed in at least two other cases. In both *Anthony Wright v. City of Philadelphia*, No. 16-cv-5020, and *Shaurn Thomas v. City of Philadelphia*, No. 17-cv-4196, Mr. Messing led the *Monell* portion of the litigation, and his development of factual information and authorship of legal briefing in those cases allowed for efficiencies in his litigation of a *Monell* claim in this case involving substantially the same facts and legal principles.

On the second point, the City understates the inherently intertwined nature of *Monell* and individual liability claims in these cases. By way of example, approximately half of the expert report Mr. Messing obtained from Joseph Pollini addressed the details of the investigation conducted by defendants Santiago and Jastrzembski and offered opinions on their departure from accepted practices. ECF 117-1 at 5-17. Nothing in the City's review of Mr. Messing's timesheet supports an across-the-board reduction in his compensable hours.[3]

---

[2] The City makes the odd suggestion that the claim against the City was of enhanced importance because "judgment against the Detectives alone would leave Plaintiff unable to collect nearly all of the judgment entered in Plaintiff's favor." ECF 316 at 3. Putting aside the absence of any authority—or logic—supporting the assertion that a plaintiff's "success" for fee purposes is measured by the resources available to the party against whom judgment is entered, the point deserves no credence given the City's inconsistent positions regarding the obligation to pay the judgment. *Compare* Tr. 8/21/2024 at 16 (statement of City counsel: "I have an obligation to the taxpayers of Philadelphia to preserve every defense before we pay a convicted murderer $16 million") *with* ECF 314 at 4 (seeking to stay City's obligation to respond to Mr. Dennis's fee request on the ground that the City may "choose to participate in Third Circuit mediation").

[3] The City lists time entries that it believes inappropriate in a string cite, ECF 316 at 4-5, but does not provide a sum total of hours connected to those entries. On Mr. Dennis's review of the cited entries, it appears that the City is challenging approximately 60 hours of Mr. Messing's work—about 3.6% of the 1,652.2 hours for which he has sought compensation. That the City

**B.      The Hourly Rates are Reasonable.**

The City fails entirely to engage with the discussion provided in Mr. Dennis's motion regarding market rates in the Philadelphia legal community and the unique experience of Mr. Dennis's counsel. Instead, the City flatly maintains that the CLS fee schedule is the beginning and end of the rate inquiry. ECF 316 at 5. In so doing, the City ignores this Court's ruling to the contrary. *See Damian J. v. Sch. Dist. of Philadelphia*, No. 06-3866, 2008 WL 1815302, at \*2 (E.D. Pa. Apr. 22, 2008) (Sánchez, J.) (discussing CLS fee schedule's underinclusive consideration of relevant factors). Similarly, the City's references to fees regularly charged by counsel and counsel's usual billing rate ignores the established principle that counsel specializing in civil rights work should not be punished for operating on a contingent fee model, *Blum v. Stenson*, 465 U.S. 886, 895 (1984), and that, instead, rates for civil rights counsel are tied to market rates for complex federal litigation. *City of Riverside v. Rivera,* 477 U.S. 561, 575 (1986).

As to rates in Philadelphia, the City offers the surprising suggestion that Mr. Sonnenfeld's declaration is "highly subjective." ECF 316 at 5. It is unclear how Mr. Sonnenfeld could be more *objective* than describing counsel's rates as fully consistent with the rates he charged before his retirement and *lower* than the rates that attorneys with far less experience than Mr. Dennis's counsel are currently charging their clients. *See* Sonnenfeld Dec. (ECF 276-1) at ¶ 12.[4] In any

---

extrapolates its objections to these hours into a request for a 40% reduction confirms that its position is utterly untethered to the facts and relevant legal principles.

[4] Should the Court require additional information on counsel's requested rates, Mr. Sonnenfeld is prepared to testify regarding his monitoring of ongoing trends nationally and in Philadelphia as to continuing increases in market rates. *See, e.g.*, Andrew Maloney, *Senior Partners Approach $3,000 an Hour, As More Billing Rate Hikes Expected in 2025*, LAW.COM (Sept. 24, 2024) (U.S. firms expected to charge fees approaching $3,000 per hour for senior partners and increase numbers of associates charging $1,000 per hour); Trudy Knockless, *Hourly Rates Rocket Higher, as Elite Firms Leverage Pricing Power*, LAW.COM (Aug. 29, 2024) (noting 8.8% increase in average billing rates of American law firms in the first half of 2024).

event, other than urging a default to the CLS rates (an approach this Court rejects), the City fails to provide any other evidence of comparable rates in the Philadelphia market. The rates requested by Mr. Dennis's counsel are, therefore, reasonable and appropriate.

C.    There are No Patently Excessive Hours Billed.

As noted, *supra* § I, Mr. Dennis has requested a total fee award that is substantially less than those awarded in other jurisdictions for cases with smaller verdicts. Despite that fact, the City claims the requested fees are "excessive." Mr. Dennis has already outlined his justification for the extensive work involved in responding to the defendants' repeated attempts to avoid accountability for their misconduct over six years, including a motion to dismiss, an interlocutory appeal, a motion to stay all proceedings, a motion for summary judgment, multiple pretrial motions, a vigorous trial defense, and post-trial motions. ECF 276 at 11-14; *see also* Sonnenfeld Dec. (ECF 276-1) at ¶¶ 18-24. Neither of the two examples the City cites—drafting the complaint and preparation of the motion for fees and costs—undermine that explanation.

As to the complaint, Mr. Messing, the principal drafter, was required to review thousands of pages of documents compiled during the 25-year history of Mr. Dennis's murder prosecution, digest those materials, and present the facts in a concise narrative form that would withstand a motion to dismiss—which, after an interlocutory appeal, it did. As to the fee motion, counsel surveyed case law throughout the Third Circuit and around the country and prepared a comprehensive brief, with supporting declarations, that was convincing enough that the individual defendants against whom it was directed chose not to respond.

Finally, the City's reference to "inefficiencies," ECF 316 at 6-7, disregards counsel's concerted efforts to streamline their request for fees by, among other things, not billing for administrative and clerical tasks or any time spent by associates or paralegals. ECF 276 at 13;

*see also* Sonnenfeld Dec. (ECF 276-1) at ¶ 18 ("I am also impressed that recovery is not sought for administrative or clerical tasks, nor for time spent by paralegals, much less by associates."). There is no justification for the City's request for a reduction in fees due to overinflated hours.

**D.    The Court May Direct Payment of Mr. Dennis's Investigative Expenses.**

The City suggests that courts uniformly bar reimbursement for costs paid to private investigators. That is incorrect. Courts routinely exercise their discretion to direct defendants to reimburse prevailing plaintiffs for investigative expenses. *See Sylvester v. City of New York*, No. 03-8760, 2006 WL 3230152, at *14 (S.D.N.Y. Nov. 8, 2006) (citing cases); *Garmong v. Montgomery Cnty.*, 668 F. Supp. 1000, 1010–11 (S.D. Tex. 1987); *see also Scruggs v. Josephine Cnty.*, No. 06-6058, 2009 WL 650626, at *8 (D. Or. Mar. 10, 2009) (authorizing payment of investigative expenses in Title VII lawsuit). Throughout this litigation, Mr. Dennis spent $4,121.04 on private investigative services for the location of witnesses and the service of subpoenas on those witnesses—a process that, given the age of the case, where counsel sought to ask witnesses about events they observed more than 30 years earlier, required repeated and prolonged efforts. These expenses are reasonable, and Mr. Dennis requests that the Court authorize reimbursement for those expenses.

**III.    Conclusion**

For the foregoing reasons, the Court should grant Mr. Dennis's motion and enter an Order directing the payment of attorneys' fees totaling $1,845,977.50 and costs totaling $13,264.43 and permitting Mr. Dennis to seek supplemental fees and costs after the resolution of any appeals and other post-trial litigation.

Respectfully submitted,


/s/ Jonathan H. Feinberg
David Rudovsky
Paul Messing
Jonathan H. Feinberg
KAIRYS, RUDOVSKY, MESSING
  FEINBERG & LIN LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

*Counsel for Plaintiff James Dennis*